Chris TRUEBA, Plaintiff,

v.

**FLOTA BANANERA ECUADORIAN LINES, INC., Defendant.**

No. 84 Civ. 9183 (IBC).

United States District Court,
S.D. New York.

Nov. 4, 1987.

Zimmerman & Zimmerman, New York City, for plaintiff; Martin Lassoff and Morris Cizner, of counsel.

Thomas H. Healey, New York City, for defendant.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff Chris Trueba ("Trueba") initiated this personal injury action against Flota Bananera Ecuadorian Lines, Inc. ("Flota"). The action was tried before this Court January 12 and 13, 1987 on the sole issue of liability. At the close of plaintiff's case in chief, defendant moved for dismissal of the action contending that plaintiff had failed to make out a prima facie case. Whereupon defendant rested its case and moved for judgment on the total evidence before us. For the same reason, plaintiff moved for judgment. We reserved decision on these motions pending receipt of post-trial papers.

Upon the following findings of fact and conclusions of law, defendant's motion for dismissal of the action is granted pursuant to F.R.C.P. Rule 41(b).

## FINDINGS OF FACT

Plaintiff was a longshoreman with over 30 years experience. On December 12, 1983 he was employed by United Terminals, Inc., a stevedore engaged by defendant to unload a cargo of bananas from defendant's vessel, the M/V PAQUISHA, a refrigerator ship docked at berth number 6 in Port Newark, New Jersey. As ship foreman, plaintiff was responsible for supervising longshoremen unloading bananas from the ship. Tr. 7–8.[1]

The unloading operation began at approximately 7:00 a.m. when riggers, employees of the stevedore, boarded the ship and prepared the hatches for unloading. *Id.* Preparation consisted of inserting conveyors into the hatches from the deck and placing the conveyors so that they emptied through the side port, an opening on the side of the ship abutting the dock. *Id.*

Preparation was completed at 8:00 a.m., at which time longshoremen, also employees of the stevedore, boarded the ship and began to off-load the banana cargo. Longshoremen in the hatch placed cartons of bananas on the conveyor which carried the cartons to the dock. Tr. 8. Plaintiff was responsible for unloading operations in the dock and cargo areas. He supervised two hatch bosses, each of whom supervised a team of longshoremen unloading the hatches.

The unloading operation continued through the morning in spite of intermittent, sometimes heavy, rain. Tr. 8–9. Hatch covers had been opened and closed by the ship's crew throughout the morning because of the rain. Tr. 10. Longshoremen were not permitted to handle the hatch covers. Tr. 10. At approximately 11:00 a.m., plaintiff called for a bosun (ship's officer) to close one of the hatches on deck to protect cartons in the hatch from the rain. Having received no response from the deck, plaintiff boarded the ship in search of a crew member to close the hatch cover. Tr. 9.

Near the open hatch on deck was an eight by eight by twenty foot container that held cargo destined for another port. Tr. 11. While at sea, that container was kept in place by four lashing chains, extending one each from the four upper corners of the container to padeyes, or fastening devices, on the deck. Tr. 12–14. Lashing chains in this position obstructed passage on deck. Before turning the ship over to the stevedore and longshoremen for unloading, the ship's crew would ordinarily have removed the lashing chains and stowed them in gear boxes set aside for that purpose. Tr. 63–64. However, stowing lashing chains away is not a required practice. Tr. 102–03. According to plaintiff's witness, Captain Schindler, it suffices to move the chain aside so that a clear passageway is maintained:

Q. Isn't it correct, Captain, it really doesn't make much difference where it (the lashing chain) is cleared to so long as the end result is obtained, a clear passageway?

A. That would be my—yes, sir.

---

1. The letters "Tr." followed by a number indicates pages of the official trial transcript.

Q. In other words, you are not telling the court that it must be taken someplace downstairs in the bow of the ship and put into some kind of locker, are you?

A. No, sir. I think it could be adequately cleared if it could be moved to the side as to provide a walkway that is unencumbered. Tr. 102–03.

On this occasion one of the lashing chains was disconnected from the padeye on deck and left hanging from the container across the passageway. The chain was ½ inch thick and 20 to 25 feet in length. Tr. 11. Plaintiff was four to five feet from the lashing chain when he noticed it lying in the passageway. Tr. 18. Plaintiff testified that he could easily have moved the chain from his path:

Q. This chain that we are talking about, the one involved in your accident, it was of such a size that it could be picked up and moved from one spot to another on the deck with your hands? You didn't need a Hi–Lo or a machine, did you?

A. No.

Q. It wasn't so heavy that you needed machinery or a winch or anything to move it?

A. Right. Tr. 75.

He chose instead to step over it. Tr. 16. As he proceeded to do so, plaintiff slipped on the wet deck, Tr. 71, came in contact with the chain, fell on his buttocks, twisting his left side and back, thereby suffering the injuries complained of here. Tr. 16.

## CONCLUSIONS OF LAW

The Longshoremen's and Harbor Workers' Compensation Act § 5(b), 33 U.S.C. § 905(b) provides for a statutory negligence action against the ship by a longshoreman injured by reason of the ship's negligence. Congress left determination of what constitutes negligent conduct under the Act to the "application of accepted principles of tort law." *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165–66, 101 S.Ct. 1614, 1621–22, 68 L.Ed.2d 1 (1981) (quoting S.Rep. No. 1125, 92d Cong., 2d Sess. 11 (1972)), U.S.Code Cong. & Admin.News 1972, pp. 4698, 4708. This circuit has adopted the standard applicable to possessors of land described in §§ 343 and 343A(1) of the Restatement of Torts. *E.G., Kakavas v. Flota Oceanica Brasileira, S.A.*, 789 F.2d 112, 117–18 (2d Cir. 1986); *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848, 855 (2d Cir.1981).

To prevail in a negligence action, a plaintiff must prove the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the breach caused injury to the plaintiff. *McCluskey v. United States*, 583 F.Supp. 740 (S.D.N.Y.1984) (wrongful death action). Thus, the plaintiff bears the burden of establishing four elements: duty, breach, causation, and damage. At this stage of the proceeding we decide only the imperative issue of liability; we need not concern ourselves now with damages.

1. Duty.

The shipowner must exercise due care "under the circumstances" with respect to the stevedore and its longshoremen. *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969). Under this standard, the shipowner must provide the stevedore with a safe place to work. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166–67, 101 S.Ct. 1614, 1621–22, 68 L.Ed.2d 1 (1981). In other words, the ship must be in such condition as will allow the "expert and experienced stevedore [to] carry on its cargo operations with reasonable safety." *Id.* 451 U.S. at 167, 101 S.Ct. at 1622. The shipowner must warn the stevedore of any hidden dangers known or chargeable to the shipowner. *Id.* Once the stevedoring operation has begun, the shipowner owes a continuing duty to the stevedore in areas of the ship under the shipowner's control. *Id.* The shipowner may be held liable if ship's personnel actively participate in the cargo operation. *Id.*

Applying these standards to the case at bar, it becomes obvious that shipowner Flota owed stevedore United Terminals and its employees a duty of care. As

noted above, Flota was obligated to provide plaintiff a safe place to work. Once the stevedoring operation begun, Flota remained responsible for areas remaining under its control.

2. Breach of Duty.

 Assuming arguendo that defendant is responsible for the misplacement of the chain, it does not follow that the mere presence of the chain in the passageway "can legally support a charge of third-party negligence against the vessel." *Albergo v. Hellenic Lines, Inc.*, 658 F.2d 66, 68 (2d Cir.1981) (Rope cuttings on deck are not a breach of shipowner's duty.). The stevedore has a duty to clear "tripping or stumbling hazards" from work areas. *Id.* at 69 (quoting 29 C.F.R. § 1918.1(a) [OSHA]). Plaintiff, stevedore's employee and ship foreman, testified that he could easily have moved the chain aside:

Q. It was a hand job to move the thing, right?
A. You could move it with your hand. Tr. 75.

Plaintiff in his testimony explicitly recognized his duty, as stevedore's employee, to clear such obstructions:

Q. It would have been your job to see to it that it would have been corrected?
A. I would have corrected it.
Q. I am asking you to tell the court, you would have corrected it because it was part of your job?
A. Right. Tr. 51.

Indeed, "[t]he stevedore is specifically hired for its experience in coping with the dangers inherent in loading and unloading cargo, and in many cases it will be perfectly reasonable for the shipowner to assume that the stevedore will correct the defect." *Evans*, 639 F.2d at 856. It was perfectly reasonable under the circumstances for Flota to rely upon Trueba, a longshoreman and ship foreman with 30 years experience, to clear the lashing chain from the passageway.

We must keep in mind that the shipowner's reliance upon the stevedore to correct dangerous conditions is not an absolute bar to shipowner liability. *Moore v.*

*Howlett, Inc.*, 704 F.2d 39, 42 (2d Cir.1983) (citing *Lieggi v. Maritime Co. of the Phillipines, Etc.*, 667 F.2d 324, 328 (2d Cir. 1981); *Evans*, 639 F.2d at 856–57). For example, the condition may be such that the stevedore cannot or will not correct it, local custom may place the burden of correcting the condition on the shipowner, or the shipowner may join in the decision to continue work in the face of the hazard. *Evans*, 639 F.2d at 856. Clearly, plaintiff has not convinced us that any of these circumstances existed in this case.

Whether the shipowner's conduct amounted to negligence is a question for the Court as trier of fact. *Lieggi*, 667 F.2d at 328. We must attempt to reach a realistic conclusion regarding defendant's reasonable expectations under the circumstances. *Evans*, 639 F.2d at 856–57. Defendant will not be held liable if it had neither actual nor constructive notice of any tripping hazard. *Id.* at 855. Plaintiff has provided us with scant evidence of actual or constructive notice to defendant of a hazardous condition. Assuming defendant knew or should have known of a tripping hazard created by the lashing chain, we find that defendant could reasonably expect plaintiff to remove it from the passageway. Trueba saw the chain and had ample opportunity to clear it from his path. He should have done so.

Accordingly, we find plaintiff has failed to establish that defendant breached its duty of due care.

3. Causation.

 The proximate cause doctrine represents a limitation placed upon the extent of liability for negligent conduct. *Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir.1982) (evidence supported finding of proximate cause). Under this doctrine, the plaintiff must establish a reasonably close causal relationship between the defendant's conduct and the plaintiff's injury. *Livingston v. Gribetz*, 549 F.Supp. 238, 242 (S.D. N.Y.1982). An act or failure to act is not regarded as the cause of an injury if the injury would have occurred without it. *Id.* at 243.

Plaintiff has presented little, if any, evidence of a causal relationship between his injuries and defendant's behavior. Plaintiff testified that he slipped on the wet floor while attempting to step over the lashing chain:

Q. You say you slipped.

A. Yes, sir.

Q. It is correct you slipped before any part of you came in touch with that chain, right?

A. Right.

Q. And is it correct your foot slipped for only one reason, there was rainwater on the deck?

A. Right. Tr. 70–71.

Plaintiff came into contact with the chain only after he had slipped.

"The decisive consideration [for this Court] in assessing the sufficiency of this evidence of causation is the 'relative probability' of 'possible explanations' for the accident, and 'the legal inferences that can most reasonably be drawn from the most probable ones.'" *Cappellini v. McCabe Powers Body Co.*, 713 F.2d 1, 5 (2d Cir. 1983) (quoting *Evans v. S.J. Groves & Sons*, 315 F.2d 335, 343 (2d Cir.1963)). We note two probable explanations for plaintiff's fall: first, he slipped on the wet deck and the lashing chain was not a cause; alternatively, he slipped on the wet deck because the lashing chain obstructed his path. If the first explanation is correct, then no liability will attach because, even if defendant had acted negligently with respect to its duty to clear the lashing chain, such negligence did not cause plaintiff's injury. Similarly, if the second explanation is correct, no liability will attach because we find that plaintiff's injury was caused not by any negligence attributable to the defendant but by plaintiff's own negligent failure to keep the passageway clear of any obstruction. Under neither of the alternate explanations can we say that defendant's conduct caused plaintiff's injury. To the contrary, we are satisfied from the proof and the law applicable thereto that plaintiff caused his own injury by failing to comply with the simple and obvious requirement that he, as employee of the ste-vedore, keep the passageway clear of tripping hazards.

We are compelled by law to find that plaintiff has failed to establish the element of causation.

## CONCLUSION

Plaintiff has not met his burden of proving that defendant breached its duty to him and that defendant's conduct caused his injuries. Plaintiff has therefore failed to establish a right to relief—liability has not been established.

Accordingly, upon the foregoing findings of fact and conclusions of law, we grant defendant's motion for dismissal of the action.

SO ORDERED.