**Keith WALDRON, Plaintiff,**

v.

**James ROTZLER, Individually and in his official capacity as Village of Hancock Fire Chief, Code Enforcement Officer, Building Inspector and Assistant Fire Coordinator for the County of Delaware and B.J. Olmstead, Individually and in his official capacity as Arson Investigator for Village of Hancock and the County of Delaware, and Nelson Delameter, Individually and in his official capacity as Fire Coordinator for County of Delaware, The Village of Hancock and County of Delaware, Defendants.**

No. 93–CV–1091.

United States District Court, N.D. New York.

Sept. 27, 1994.

---

Ronald P. Hart, Ithaca, NY, for plaintiff.

Levene, Gouldin & Thompson, Binghamton, NY (Cynthia Ann Manchester, of counsel), for defendants Rotzler and Village of Hancock.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This action is brought pursuant to 42 U.S.C. § 1981, 1982 and 1983. The complaint also asserts several state law causes of action: negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion. The action arises mainly from a fire which occurred on May 24, 1992 at premises owned by plaintiff, Keith Waldron, located at 37 East Front Street in Hancock, New York. Plaintiff owned two properties in the Village of Hancock, both of which burned down within 3 months of each other in 1992—the 37 East Front Street property burned down first and the second property burned down a week after this action was filed. Plaintiff is a 38 year old black male who is disabled and supported himself entirely on the income from these properties and two others he previously owned in Pennsylvania and Liberty, New York.

The fire at 37 East Front Street began at approximately 12 midnight and took several hours to extinguish. The fire was investigated by B. James Olmstead, Deputy Fire Coordinator for Delaware County, on May 26, 1992, who determined the fire was of suspi-

cious origin. Mr. Olmstead, however, was unable to determine the exact cause.

Plaintiff claims that he first learned of the fire over nine hours after it began through a local carpenter he had hired to do work on the property. Despite the fact that defendant Fire Chief Rotzler was on the scene of the fire and knew to leave messages for plaintiff at his parents' home as he had done in the past if necessary, plaintiff alleges that Rotzler did not contact him. Plaintiff called Rotzler at approximately 12:45 pm on May 24, 1992 and asked why he had not notified him of the fire. According to plaintiff, Rotzler claimed that a message was left on the answering machine at plaintiff's parents' house. Plaintiff asserts that his parents have never owned an answering machine and his parents attest that they were home all weekend and never received a call from Rotzler, or anyone else, about the fire.

Rotzler told plaintiff to meet him at the Hancock firehouse at 10:00 am on May 26, 1992. Plaintiff told Rotzler not to touch anything and that he would hire his own fire investigator. Plaintiff explained that he would try to make it and did arrive at 10:45 am, but according to plaintiff, the building was closed and Rotzler could not be found. Defendant Rotzler claims that he waited at the firehouse for two hours but plaintiff did not arrive.

Plaintiff's building was demolished on May 26, 1992. The only formal notification plaintiff received of the demolition of the building was a notice sent by certified mail that the property would be demolished on May 26th. Plaintiff did not receive this notice until June 2nd. The notice was dated May 26th but was not mailed until May 27th.

Plaintiff challenges defendants' decision to demolish the remains of his building without notice and an opportunity to be heard. Plaintiff also makes numerous other allegations that he has been discriminated against by defendants. He claims that they have

subjected him to building code requirements not enforced against white property owners, and that a potential tenant, Mr. Hua, who was trying to open a Chinese restaurant on plaintiff's 37 East Front Street property was subjected to unusual building code requirements. Plaintiff claims that Mr. Hua's inability to acquire the necessary building permits to start his restaurant caused Mr. Hua to breach his ten year lease agreement with plaintiff.

Plaintiff complains of various other incidents with Village of Hancock officials, including one incident where he was beaten by Police Officer Gene Morgan (not a named defendant) when stopped for a traffic violation immediately after refusing to sell his East Front Street property to local businessmen. He claims that local police frequently monitored his travel to and from Hancock, and on one occasion, chased him over the state line into Pennsylvania. He asserts that village law enforcement failed to investigate incidents of property damage to his buildings, and that a building inspector attempted to enter one of his tenant's residences without the required warrant. Plaintiff claims that he was threatened when he confronted the inspector with his lack of a proper warrant. These all appear to be submitted as support for the concept that he was experiencing ongoing harassment even before the fire took place.

Defendants Rotzler and the Village of Hancock now move for dismissal under Rule 12(b)(6) and/or for summary judgment.[1]

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Dismissal

The court should grant a Rule 12(b)(6) motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In

---

1. According to a stipulation of discontinuance, dated December 20, 1993, the action has been discontinued as to defendants B.J. Olmstead and Nelson Delameter in their individual and official capacities, the County of Delaware, and James Rotzler insofar as the claim was brought against

him in his capacity as Assistant Fire Coordinator for Delaware County. The suit remains as to James Rotzler in his individual capacity and as Code Enforcement Officer, Building Inspector and Village of Hancock Fire Chief. The suit also remains as to the Village of Hancock.

determining the legal sufficiency of a claim, the facts must be judged in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### 1. Claim Under 42 U.S.C. § 1983

Plaintiff brings a cause of action under 42 U.S.C. § 1983 which requires that the plaintiff make two allegations: (1) that some person has violated the plaintiff's protected rights under the U.S. Constitution or federal law; and (2) that the person who allegedly violated such rights acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). When examining a suit brought under § 1983 it is the duty of the court to examine whether the plaintiff has alleged sufficient facts which, if proved, would comprise an actionable deprivation of a federal right. *Robinson v. City of Mount Vernon,* 654 F.Supp. 170, 172 (S.D.N.Y.1987). The federal courts are prohibited from applying a "heightened pleadings standard" to § 1983 cases. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Nonetheless, complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). It is in light of these considerations that the plaintiff's § 1983 claim is examined.

It appears clear to the court that what plaintiff has labeled in his complaint as a § 1983 cause of action actually states a § 1981 cause of action, and what is labelled as a § 1981 cause of action actually states a § 1983 cause of action. In deciding a motion to dismiss, the court should scrutinize the complaint to ascertain whether the allegations provide for relief on any viable grounds. *Emanuel v. Barry,* 724 F.Supp. 1096, 1098 (E.D.N.Y.1989). "Particularly where a party sues under the wrong section of the federal civil rights statutes, a court may uphold the complaint if the allegations satisfy another section." *Id.* This being the law, the court recognizes the plaintiff's § 1981 cause of action as being, in reality, his § 1983 cause of action.

Plaintiff has alleged that the defendants, at all times, acted under color of state law and that plaintiff's property was taken without due process. Plaintiff also claims that Village of Hancock Local Law Number 1 of 1982 § 21 A–13 is facially unconstitutional. This, combined with the general factual allegations found in paragraphs 1 through 64 constitute a sufficient claim that state actors have violated plaintiff's due process rights under the Fourteenth Amendment. Thus, plaintiff has properly pleaded a § 1983 claim.

### 2. Monell Claim

For a valid claim of municipal liability under § 1983 the municipality itself must be the wrongdoer rather than one of its employees because § 1983 liability cannot be based on a respondeat superior theory. *Monell v. Department of Social Serv.,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). A valid claim of municipal liability under § 1983 must be based on official municipal policy or custom pursuant to which a constitutional violation was committed. *Id.* at 689–91, 98 S.Ct. at 2035–36.

Plaintiff does make a claim in his complaint that the Village of Hancock failed to use care in the training and hiring of village employees who investigated the fire on his property. However, this allegation is made as part of the pendant state law negligence claim only and is not made part of the preceding federal civil rights claims. Therefore, insofar as plaintiff has attempted to set forth a Monell claim against the Village of Hancock, he has failed, and so any such Monell claim is dismissed.

### 3. Claim Under 42 U.S.C. § 1981

The law is clear that in order to state a claim under § 1981 the plaintiff must plead facts which establish that defendants' actions were racially motivated and purposefully discriminatory. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988). The key question in examin-

ing the sufficiency of a claim based on § 1981 is whether plaintiff has "assembled specific facts adequate to show or raise a plausible inference that [he was] subjected to race-based discrimination." *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 17 (1st Cir. 1989). "Under § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under Rule 12(b)(6)." *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993). In order to make a proper pleading under § 1981, plaintiff must allege some facts that demonstrate that his race was the reason for the defendants' actions. *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982). Failure to allege such facts makes the claim incomplete. *Id.*

█ Generally, examples of disparate treatment are not a necessary element of a well-pleaded § 1981 claim. *Melson v. Kroger Co.,* 550 F.Supp. 1100, 1106 (S.D.Ohio 1982). Nevertheless, claims of selective enforcement under § 1981 do require a showing of specific instances in the complaint where the plaintiffs were singled out for unlawful oppression in contrast to others similarly situated. *Yusuf,* 827 F.Supp. at 956; *Albert,* 851 F.2d at 573. Clearly, plaintiffs' § 1981 claims are based on selective enforcement.

█ As discussed previously, the court recognizes what has been labelled plaintiff's § 1983 cause of action to be a § 1981 cause of action. Paragraph 70 of the complaint specifically states that defendants' behavior was motivated by racial animus and that defendants' demolition of plaintiff's property without notice was willful and intentional. Paragraphs 70a and b state that plaintiff is a Black American and has been discriminated against because of his status as a Black American. Paragraph 70a also alleges that defendants "have not used said local law and other laws in a similar manner against other citizens as they have against Plaintiff who is a Black American." (Amended Complaint at ¶ 70a). The court finds this sufficient to state a selective enforcement claim under § 1981, and so defendants' dismissal motion is denied in this regard.

### 4. Claims Under 42 U.S.C. § 1982

█ 42 U.S.C. § 1982 states that:

[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

To state a claim under § 1982, just as with § 1981, plaintiff must show that defendants deprived him of his rights due directly to his race. Plaintiff must plead both the existence of racial animus and intentional discrimination. *Studifin v. New York City Police Dep't,* 1991 WL 60379 at 3 (S.D.N.Y. Apr. 8, 1991); *see also General Bldg. Contractors Ass'n,* 458 U.S. at 390–91, 102 S.Ct. at 3150 (stating that § 1981 only prohibits intentional discrimination); *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184, 187–89 (7th Cir.1982) (explaining that the intent requirement of § 1981 also applies to § 1982). Defendant argues, without citing legal support, that a § 1982 claim requires the same showings as a selective enforcement claim under § 1981, and notes that plaintiff has not shown examples of specific instances where he was singled out for unlawful oppression in contrast to others similarly situated.

It is logical to place the pleading requirements of a selective enforcement claim on causes of action brought under both § 1981 and § 1982. *See Open Housing Center, Inc. v. Samson Management Corp.,* 1992 WL 309862 at 3 (S.D.N.Y. Oct. 14, 1992) (noting that the rationale for the pleading requirements of § 1981 apply equally to other claims of discrimination and that to properly plead a claim for selective enforcement under § 1981, plaintiff must specify instances where he was singled out for discriminatory treatment in contrast to others similarly situated). Thus, the court agrees with defendants', albeit unsupported, statement.

Although the complaint clearly alleges an instance where defendant Rotzler found a stove pipe on plaintiff's East Front Street building to be in violation of the building code while other similar stove pipes on properties with white owners were not required

to be moved, this instance does not bear any apparent relation to the breaking of the lease which forms the basis of the § 1982 claim. While paragraphs 38 through 42 clearly allege that defendant Rotzler has required plaintiff to make changes to his properties which have not been required of white property owners, these changes do not appear to be tied to the lease situation. In regard to the broken lease, plaintiff merely alleges that defendant Rotzler sent the potential tenant to a nonexistent address in order to file his building renovation applications and required the potential tenant to make changes to the building that he found unusual compared to his past experience. (Amended Complaint at ¶¶ 48–49).

 In § 1981 selective enforcement claims, whose pleading standards the court has found applicable to § 1982 claims, the plaintiff must specify incidents where he was singled out for unlawful oppression in contrast to those similarly situated. *Albert*, 851 F.2d at 573 (applying the standard to § 1981 claims). However, the allegations of nonenforcement must be comparable to those allegations of discriminatory enforcement put forth by the plaintiff. *Id.* This does not require that exactly similar situations of nonenforcement must be plead, just "reasonably comparable cases." *Id.* at 573–74. In plaintiff's allegations, he has simply stated that the individual seeking to open the restaurant was subjected to building code requirements that he found unusual compared to his prior experience in running a restaurant. He does not allege that white individuals were not subjected to the same unusual standards, but rather alleges that plaintiff himself was, on another occasion, required to make changes to his property not required of white property owners. Thus, the plaintiff has failed to make the proper allegations to support a claim under § 1982, and so, the court dismisses the § 1982 claim.

### 5. Intentional Infliction of Emotional Distress

 In the fifth cause of action, plaintiff claims that the series of harassing and discriminatory actions culminating in the demolition of the remains of his building before he was able to have it independently inspected amounts to the intentional infliction of emotional damage. In order to survive a dismissal motion, plaintiff's claim must satisfy a stringent standard. The tort consists of four elements: (1) extreme and outrageous behavior; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the injury and the behavior; and (4) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (Ct.App. 1993). The first element is the most difficult to support, for in order to find liability plaintiff must show that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (Ct.App.1983).

 Defendants argue that plaintiff has not shown outrageous conduct. However, "when the actor's conduct is extraordinarily vindictive, it may be regarded as so extreme and so outrageous as to give rise to a cause of action for emotional distress." *Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 191 (Sup.Ct., Westchester Co.1968), *citing*, Restatement 2d, Torts, § 46 (1966). In *Flamm* the court found that a cause of action for intentional infliction of emotional distress had been sufficiently pleaded when the plaintiff alleged a laundry list of threatening and malicious actions by the defendant. The court noted that:

> [i]f a man finds himself perpetually haunted by an enemy; if he is greeted at every turn by baleful looks, sudden sorties which fall short of physical contact, and derisive laughter; if he cannot drive his car without the imminent threat of a collision from the rear; and if he is troubled at all hours by telephone calls followed only by silence, then it can hardly be doubted that he is being subjected to the extreme and outrageous conduct which gives rise to a cause of action in tort.

*Flamm*, 291 N.Y.S.2d at 191.

In light of this precedent, assuming the allegations in plaintiff's complaint to be true and

reading the complaint as a whole, the court finds that plaintiff has properly stated a claim for intentional infliction of emotional distress. There certainly remain at issue material facts which support or refute this claim, and so neither dismissal nor summary judgment in favor of the defendants can be granted.

### 6. Negligent Infliction of Emotional Distress

■ Plaintiff's sixth cause of action claims negligent infliction of emotional distress. However, plaintiff's claim stems from his witnessing the destruction of the remains of his building after the fire. It is clear under New York law that a claim for negligent infliction of emotional distress cannot stem from the destruction of property. *Jensen v. L.C. Whitford Co.*, 167 A.D.2d 826, 562 N.Y.S.2d 317, 318 (4th Dep't 1990). Plaintiff may not recover for emotional distress caused by the negligent destruction of his property. *Fowler v. Town of Ticonderoga*, 131 A.D.2d 919, 516 N.Y.S.2d 368, 370 (3d Dep't 1987). Nor, may plaintiff recover for emotional distress caused by witnessing the negligent damage of his property. *Curtin v. Bowery Savings Bank*, 150 A.D.2d 327, 540 N.Y.S.2d 856, 857 (2d Dep't 1989). Thus, defendants' dismissal motion is granted as to this cause of action.

### 7. Conversion

■ The seventh cause of action in plaintiff's complaint alleges a conversion claim. In New York, an action for conversion only lies with respect to personal property and cannot be used as a basis for relief for real property loss. *Garelick v. Carmel*, 141 A.D.2d 501, 529 N.Y.S.2d 126, 128 (2d Dep't 1988); *Boll v. Town of Kinderhook*, 99 A.D.2d 898, 472 N.Y.S.2d 496, 498 (3d Dep't 1984). Therefore, plaintiff's conversion claim regarding his real property is dismissed.

### B. Standard for Summary Judgment

Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H. Ry. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *quoting, Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). All ambiguities must be weighed in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### 1. Qualified Immunity

■ Defendants claim that regardless of the sufficiency of plaintiff's claims regarding the demolition of his building, they should not be found liable for violation of the due process clause of the Fourteenth Amendment because they are shielded by qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990). For an action of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ It is clear that the complaint alleges a violation of the due process clause of the Fourteenth Amendment for failure to grant plaintiff a pre-demolition hearing. It is clearly established that Fourteenth Amendment procedural due process generally requires a pre-deprivation hearing before property rights can be terminated. *Hodel v.*

*Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 298–300, 101 S.Ct. 2352, 2372 (1981). It is this right to a pre-deprivation hearing which is asserted by plaintiff. However, although due process generally requires a pre-deprivation hearing, it has long been established that in the case of an emergency, the deprivation of property may occur without a prior hearing even if a later remedy is inadequate. *See North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908); *Hodel,* 452 U.S. at 298–300, 101 S.Ct. at 2372. The important issue thus becomes whether it was objectively reasonable for the municipality and its fire chief to believe that such an emergency existed.

▮ Defendants have supported the objective reasonableness of their finding that an emergency existed with photographs of the fire-gutted building and affidavits of individuals who observed the building after the fire. B.J. Olmstead, Deputy Fire Director for the County of Delaware attested that the building was gutted by the fire, the roof had caved in, and that the exterior walls were virtually free standing without support. (Olmstead Aff. at ¶ 4). The Mayor of the Village of Hancock, Robert Drumm, also observed the building and witnessed debris falling from the structure onto the sidewalk in front of the premises, as well as the fact that the front wall of the building was bowed outward toward the adjacent street and sidewalk. (Drumm Aff. at ¶ 3–4). He also noted the concern at the time was that the walls were waterlogged and in danger of collapsing due to the additional water weight. (Drumm Aff. at ¶ 6). According to Mayor Drumm, this information was assessed in light of Village of Hancock Code § 21A–13 which allows for the demolition of buildings if they pose an imminent danger to life and public safety as the result of fire or explosion. Relying on this code section it was determined that the building should be removed.

The question then becomes whether the demolition of the building based on Hancock Code § 21A–13 falls under the emergency situation exception to the normal rule that due process requires a hearing prior to deprivation of a property right. Based on the foregoing information, the court finds that it was objectively reasonable for the defendants to view this situation as an emergency which would fall under § 21A–13. In so finding, the court also concludes that it was objectively reasonable to view this situation as falling within the emergency exception of due process which allows termination of property rights without prior notice and hearing. Thus, it was objectively reasonable for defendants to believe that their actions did not violate the requirements of procedural due process. Additionally, in keeping with this reasoning, to the extent plaintiff's complaint appears to submit that § 21A–13 of the Hancock Code is facially unconstitutional, such an allegation does not sway the court's opinion that the defendants' conduct was objectively reasonable under the due process requirements of the Fourteenth Amendment. In finding qualified immunity to be applicable in this situation, the court grants summary judgment for the defendants as to the claims brought under § 1981 and § 1983.

### 2. Negligence

#### a.) liability of defendant Rotzler

Plaintiff brings a cause of action in negligence for the manner in which the fire on his property was investigated. Defendants claim that defendant Fire Chief Rotzler did not play a substantive role in the manner in which the fire was investigated, and only provided manual labor to move debris while the fire investigators, who have already been dropped from this suit, conducted their examination of the building. However, plaintiff cites New York General Municipal Law § 204–d which states that the fire chief has the duty to determine the cause of any fire has been called to extinguish, and after an investigation, must file a report as to the cause of the fire with the state.

▮ The required elements for making a prima facie showing of negligence are that: (1) a duty was owed by defendant to plaintiff; (2) defendant breached that duty; (3) the plaintiff was injured; and (4) the cause of plaintiff's injury was the defendant's breach of the duty. *Trueba v. Flota Bananera Ecuadorian Lines, Inc.,* 675 F.Supp. 786, 788 (S.D.N.Y.1987). In this case, plaintiff has

clearly shown that defendant Rotzler, as fire chief, had a duty to have the fire investigated, and had a duty to prepare a report of the cause of the fire as delineated at § 204–d of New York General Municipal Law.[2] However, the section merely states that the fire chief must investigate, or have the fire investigated, and that he must file a causation report with the state. This duty does not necessarily give plaintiff a cause of action for nonfiling of such a report. *Cf. Goldner v. Kemper Ins. Co.*, 125 A.D.2d 954, 510 N.Y.S.2d 44, 45 (4th Dep't 1986) (holding that a fire investigator's duty to non-negligently investigate and report fire loss to insurance companies under the terms of a contract did not extend a duty to investigate non-negligently to the individual who suffered the fire loss on his property).

■ "Liability for negligent conduct may be imposed only if it can be established that the defendants owe a duty to the plaintiffs." *Id.* In this case, plaintiff has not shown that a duty to file the fire report is owed to him. In fact, case law shows that "[a]bsent a special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals, no liability may be imposed upon a municipality for failure to enforce a statute or regulation." *Sanchez v. Village of Liberty*, 42 N.Y.2d 876, 366 N.E.2d 870, 871, 397 N.Y.S.2d 782, 783 (Ct.App. 1977). This principal has been used to exempt both municipalities themselves and municipal officials from negligence liability for failure to enforce statutes or ordinances. *See id.; O'Connor v. City of New York*, 58 N.Y.2d 184, 447 N.E.2d 33, 35, 460 N.Y.S.2d 485, 487 (Ct.App.1983) (discussing instances where municipalities and municipal inspectors have been found not liable for negligence due to the fact that their statutory duties created no special relationship with the plaintiffs). Similarly, in this case, defendant Rotzler's general statutory duties under § 204–d

do not create a special relationship between him and a particular class of individuals so as to create a duty of care running to the plaintiff. Thus, plaintiff's negligence claim against defendant Rotzler cannot survive defendants' summary judgment motion.

**b.) liability of the Village of Hancock**

■ It is clear from case law that plaintiff does not have a proper claim against the Village of Hancock for the negligent handling of the fire and subsequent investigation. Allegations of negligent conduct at the scene of a fire are insufficient to sustain a claim of negligence against the municipality. *La Duca v. Town of Amherst*, 53 A.D.2d 1011, 386 N.Y.S.2d 269, 269 (4th Dep't 1976). This holds true even if the claim alleges damage to the property caused after the fire has been controlled. *See Vogel v. Liberty Fuel Corp.*, 52 A.D.2d 667, 382 N.Y.S.2d 264, 264 (3rd Dep't 1976). Therefore, the negligence claim involving the investigation and demolition of the plaintiff's building cannot be maintained against the Village of Hancock.

**C. Jurisdiction Over Pendant State Law Claims**

■ In light of the foregoing decision, the court has dismissed or granted summary judgment on all the federal claims presented, leaving only the pendant state law claim of intentional infliction of emotional distress for further adjudication. The Supreme Court held in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that if the federal claims in a suit are dismissed before trial, the state claims should also be dismissed. Because there are no federal law claims left standing after this motion, the court finds it appropriate to dismiss the state law claim for intentional infliction of emotional distress as well.

---

2. General Municipal Law § 204–d states that: The fire chief of any fire department or company shall ... to the extent reasonably possible determine or cause to be determined the cause of each fire or explosion which the fire department or company has been called to suppress. He shall file with the office of fire prevention and control of the department of state a report

containing such determination and any additional information required by such office regarding the fire or explosion ... He shall contact or cause to be contacted the appropriate investigatory authority if he has reason to believe the fire or explosion is of incendiary or suspicious origin.
23 Gen.Mun.Law § 204–d (McKinney 1986).

## III. CONCLUSION

In conclusion, the court dismisses plaintiff's claims under 42 U.S.C. § 1982, any Monell claim against the Village of Hancock, and the pendant state law claims of conversion and negligent infliction of emotional distress in their entirety. The court grants summary judgment in favor of the defendants on plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 finding that the defendants are entitled to qualified immunity. Furthermore, the court grants summary judgment in favor of defendants on plaintiff's negligence claim. The sole claim left for adjudication being plaintiff's claim of intentional infliction of emotional distress, the court dismisses it for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**