Tove dePOEL, Plaintiff,

v.

The CITY OF NEW YORK, the New York City Health and Hospitals Corporation, John Doe, M.D., a physician whose identity is unknown at this time, and Deva Alapati, M.D., personally, Defendants.

No. CV 90–3424.

United States District Court, E.D. New York.

Aug. 7, 1991.

---

Mental Disability Law Clinic, Touro College, Jacob D. Fuchsberg Law Center (William M. Brooks, of counsel), Huntington, N.Y., for plaintiff.

Victor A. Kovner, Corp. Counsel (Norma A. Cote and Samuel Moriber, of counsel), New York City, for defendants.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Tove dePoel brings this action against defendants the City of New York, the New York City Health and Hospitals Corporation, a doctor sued as John Doe, M.D., and Deva Alapati, M.D., claiming that defendants violated her rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution by committing her involuntarily to a hospital without a proper finding that her mental illness was "likely to result in serious harm" to herself or others, by not affording her the prompt hearing required under New York law, and by not advising her of her potential liability for the costs of treatment.

This court has jurisdiction pursuant to 28 U.S.C. § 1331, granting jurisdiction over civil actions arising under the Constitution, laws, and treaties of the United States, and 28 U.S.C. § 1343(a)(3), granting jurisdiction over actions arising under 42 U.S.C. § 1983.

Defendants move to dismiss or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56, contending that the plaintiff has not made out a claim for which relief may be granted and that the action is barred by the applicable three year statute of limitations.

█ Both sides have submitted proof outside the complaint, and the court treats the motion as one for summary judgment.

Many of the facts are not in dispute.

On August 19, 1987, police officers brought plaintiff to the Queens Hospital Center believing she was suffering from mental illness. Plaintiff was initially examined by the doctor sued as John Doe, M.D., whose illegible signature is on the Record of Emergency Admission, a form issued by the State Office of Mental Health for use for emergency admissions under § 9.39 of the New York State Mental Hygiene Law.

Section 9.39 provides in pertinent part that "[t]he director of any [qualified] hospital ... may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others...."

The section provides that "Likelihood to result in serious harm" shall mean:

1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or

2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

The section also provides that the director of the hospital shall admit the person only if a staff physician upon examination finds the person qualifies under the section. But the person may not be retained for more than forty-eight hours unless the finding is confirmed by another staff psychiatrist. The person may then be retained for fifteen days, but not beyond that unless on a new admission on an application supported by two new examining physicians' certificates.

The emergency admission form recites the substance of these provisions of § 9.39, leaves a space for the admitting physician to describe the circumstances which led to the hospitalization, and contains a printed statement that "I have examined the patient named above and confirm his need for immediate observation, care and treatment for a mental illness which is likely to result in serious harm to himself or others."

The doctor wrote on the form used to admit plaintiff: "Pt has been disorganized, unkempt, grossly delusional, paranoid, unable to take care of herself or house." He wrote nothing about "serious harm" but certified plaintiff for emergency involuntary confinement. Two days later defendant Dr. Alapati signed a form entitled "Examination for 48–hour confirmation of need for emergency admission." The doctor stated "yes" to the printed question "Does the patient show a tendency to injure himself."

On September 3, 1987, the hospital continued to hospitalize plaintiff pursuant to Mental Hygiene Law § 9.27. That section allows for involuntary confinement for a period up to sixty days on the certificates of two examining physicians that the person "is mentally ill and in need of involuntary care and treatment in a hospital."

The complaint alleges, and defendants' affidavits do not dispute, that when plaintiff became aware that she would not be released she sought a hearing to challenge her hospitalization. By the terms of § 9.39, such a hearing must be held within five days of the request. According to the complaint, the hearing was repeatedly adjourned until her release.

On October 2, 1987, plaintiff signed "voluntary" admission papers. In her affidavit she says she did so because Dr. Alapati told her that if she wished to go home for a visit she would have to sign. But she was not released until October 9, 1987.

Defendants say that (a) the action is barred by the statute of limitations, and (b) plaintiff has not made out a claim for a violation of either substantive or procedural due process.

## I

The statute of limitations in an action under 42 U.S.C. § 1983 is determined by borrowing the state law governing an analogous cause of action. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). In the State of New York that statute of limitations is three years. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

Defendants argue that plaintiff's involuntary confinement ended on October 2, 1987, and that any claim for involuntary confinement accrued no later than that date. Plaintiff's complaint was filed on October 4, 1990, more than three years later.

■ In the light of plaintiff's affidavit it appears that there is a question of fact as to whether her confinement between October 2 and October 9, 1987, was truly voluntary. But in any event plaintiff says that the statute was tolled under CPLR § 208 because she was under the disability of "insanity" when the claim accrued. Mere mental illness is insufficient. The section extends "the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of America, Inc.*, 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1980). There is a genuine issue of material fact as to whether she met that standard.

## II

Plaintiff's due process claim has two parts, substantive and procedural.

■ It is a violation of substantive due process to lock a person up against her will and keep her indefinitely based on the mere finding of "mental illness." *O'Connor v. Donaldson*, 422 U.S. 563, 575–76, 95 S.Ct. 2486, 2493–94, 45 L.Ed.2d 396 (1975). Only if the person poses a danger to herself or others so that she cannot live safely in freedom may the state confine her against her will. *Id.*

■ In *Project Release v. Prevost*, 722 F.2d 960, 971–74 (2d Cir.1983), the Court of Appeals for the Second Circuit upheld against a substantive due process claim both § 9.39 and § 9.27. Section 9.39 requires a finding of likelihood of danger. Section 9.27 does not do so explicitly. But, as the Court of Appeals held, the New York state courts have read the section narrowly to require dangerousness, thus meeting the substantive due process criteria. Plaintiff has thus not shown a violation of substantive due process. Her claim that the doctors did not make the requisite findings is inconsistent with their reports. There is no suggestion that the doctors maliciously or in bad faith declined to follow the statutory procedure. This court thus has no basis to reexamine their findings.

## III

■ Plaintiff also alleges violation of her procedural due process rights. New York's involuntary commitment statute

have been held to meet the standards of procedural due process. *Id.* But, according to plaintiff, defendants did not adhere to the procedural requirements of the statute.

Section 9.39(a) provides that at any time after admission, the patient, any relative, friend or the mental hygiene legal service may request a judicial hearing on the question of need for immediate observation, care, and treatment. The hearing must be held within five days after the request is received, "except that the commencement of such hearing may be adjourned at the request of the patient."

Plaintiff says that although she requested a hearing, it was repeatedly adjourned until she was released. The papers do not explain whether the adjournments were at the request of the plaintiff or the defendants. If the adjournments were requested by the defendants or were not validly requested by plaintiff, the defendants have not met the procedural requirements on which the Court of Appeals based its determination that § 9.39 complied with due process.

There is an issue of fact requiring a trial as to whether plaintiff was denied her procedural rights.

The court denies defendants' motion.

So ordered.