**Brian DEMARCO, Plaintiff,**

v.

**S. SADIKER, M.D., personally, Edgar Paizin, M.D., personally, S. Singh Ohson, M.D., personally, John P. Iafrete, M.D., in his official capacity as Executive Director of Pilgrim Psychiatric Center, Defendants.**

**No. 93–CV–5938 (ARR).**

United States District Court, E.D. New York.

Sept. 25, 1996.

William M. Brooks, William P. Coyle, Mental Disability Law Clinic, Huntington, NY, for plaintiff.

Dennis C. Vacco, Attorney General, State of New York (Patricia Hingerton, Assistant Attorney General, of counsel), Hauppauge, NY, for defendants Paiz, Ohson and Iafrate.

Owen B. Walsh, Nassau County Attorney (William Riccio, Deputy County Attorney, of counsel), Mineola, NY, for defendant Sadiker.

## OPINION AND ORDER

ROSS, District Judge:

Plaintiff has brought a civil rights action under 42 U.S.C. § 1983 and state law claims of false imprisonment as a result of his involuntary confinement at the Pilgrim Psychiatric Center. Plaintiff alleges that defendants violated his right to substantive due process by confining him involuntarily even though he was not a danger to himself or others. Plaintiff also alleges that defendants violated his right to procedural due process by failing to comply with the requirements of N.Y. Mental Hygiene Law § 9.37 ("M.H.L. § 9.37"), which allows for the involuntary confinement of a mentally ill person who poses a likely risk of serious harm to himself or others. Further, plaintiff alleges that defendants falsely imprisoned him by intentionally confining him without his consent and without a privilege to do so.

This court previously granted summary judgment to defendants Sadiker, Ohson and Iafrete on all claims but denied summary judgment to defendant Paiz [1] pending further discovery on the issue of whether Dr. Paiz performed a legally sufficient psychiatric examination. *Demarco v. Sadiker*, 897 F.Supp. 693 (E.D.N.Y.1995). Plaintiff timely moved for reargument on the issue of Dr. Iafrete's motion to dismiss the demand for expungement, an application that the court deferred pending an anticipated renewed motion for summary judgment, following limited discovery, with respect to defendant Paiz. Defendant Paiz has now renewed his motion for summary judgment. Plaintiff cross-moves for summary judgment against defendant Paiz and moves for reargument of this court's grant of defendant Iafrete's motion to dismiss, which denied plaintiff the remedy of expunging his record. For the reasons discussed below, Dr. Paiz's and plaintiff's motions for summary judgment are denied. The court also modifies its Order of May 22, 1995 and denies Dr. Iafrete's motion to dismiss.

## FACTUAL BACKGROUND

A more complete discussion of the facts is included in the court's prior decision, *Demarco v. Sadiker*, 897 F.Supp. 693, familiarity with which is assumed. The following briefly summarizes those facts relevant to the present motions.

---

1. Paiz apparently is the correct spelling of this defendant's name. *See Demarco,* 897 F.Supp. at 695 n. 2.

In the early morning hours of January 1, 1993, police officers brought plaintiff from the Hicksville Station of the Long Island Railroad to the psychiatric emergency room of the Nassau County Medical Center. While there, Dr. Sadiker examined the plaintiff and concluded that he was uncontrollable, unpredictable and potentially dangerous to himself and others. As a result, Dr. Sadiker filled out a request that plaintiff be admitted to the Pilgrim Psychiatric Center ("PPC"), to which plaintiff was then transported.

After arriving at PPC, plaintiff came into contact with Dr. Paiz. Apparently, both plaintiff and Dr. Paiz agree that this contact began at approximately 12:45 p.m. Plaintiff and Dr. Paiz present divergent stories on what occurred after that time. Dr. Paiz testified at his deposition that he read Dr. Sadiker's Certificate of Application for Involuntary Admission, observed the plaintiff and may have asked the plaintiff a few questions, possibly limited to questions about how plaintiff was feeling. Then, still at approximately 12:45 p.m., Dr. Paiz signed the Physician's Confirmation of Need for Immediate Hospitalization. At 1:00 p.m., Dr. Paiz began filling out his Screening/Admission Note. Dr. Paiz also attested that he conducted a psychological examination of the plaintiff as well as two different forms of physiological examinations. While he is clear that January 1, 1993 was a hectic day, and that he received numerous phone calls during the time that he claims he was with the plaintiff, Dr. Paiz is unclear as to how much time he spent with the plaintiff, describing it alternately as a half-hour or an hour. Plaintiff, on the other hand, flatly denied at his deposition that Dr. Paiz ever examined him at all.

## DISCUSSION

### I. Summary Judgment Standard

A party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists and that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there are material issues in dispute, the court must draw all factual inferences and view all factual assertions in favor of the nonmoving party. *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.*

### II. Due Process and Involuntary Commitment

■ An involuntary civil commitment is a "massive curtailment of liberty." *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980). Consequently, a state may not constitutionally "confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson,* 422 U.S. 563, 576, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975). The due process protections include both a procedural and a substantive component. *Demarco,* 897 F.Supp. at 699. While the Second Circuit has determined that the strictures of the New York civil commitment statute meet the standards of due process, *Project Release v. Prevost,* 722 F.2d 960, 973–74 (2d Cir. 1983), failure to follow the procedures mandated by the statute can result in a due process violation.

### A. Procedural Due Process

■ Plaintiff alleges that Dr. Paiz violated his right to procedural due process by failing to make a determination, as required by M.H.L. § 9.37, that plaintiff suffered from a mental illness that was "likely to result in serious harm to ... others." *See* First Amended Complaint, ¶ 31. Because the statute's procedural protections would be meaningless if the confirming physician could admit the patient without an examination, the legally sufficient performance of an examination under the Mental Hygiene Law is a prerequisite to the statutory determination that a patient is dangerous to himself or to others. *Rodriguez,* 72 F.3d at 1062 (rejecting the suggestion "that a physician's mere making of a finding satisfies the requirements of either [M.H.L. § 9.39] or due process"). Consequently, the performance of an examination satisfactory to meet the require-

138

ments of the Mental Hygiene Law is a necessary component to affording a patient procedural due process.[2]

Both plaintiff and Dr. Paiz have moved for summary judgment on the procedural due process issue. Because there are genuine issues of material fact that remain unresolved, the court must deny both motions for summary judgment. Whether Dr. Paiz performed an examination of plaintiff that conforms to the requirements of M.H.L. § 9.37 is a question that must be resolved by the trier of fact.

### 1. *Dr. Paiz's motion for summary judgment*

In resolving Dr. Paiz's motion for summary judgment the court must view the facts in the light most favorable to the plaintiff. Viewed this way, a reasonable jury could find that Dr. Paiz did not examine plaintiff in a manner sufficient to meet the requirements of M.H.L. § 9.37.

Resolving all factual disputes and drawing all inferences in plaintiff's favor, there exists a genuine issue of material fact as to whether Dr. Paiz examined plaintiff because plaintiff testified that Dr. Paiz did not conduct an examination. Demarco Deposition, Affirmation of Patricia M. Hingerton dated November 13, 1995 ("Hingerton Aff."), Exh. C at 40.

Further, as Dr. Paiz himself admits, Defendants' Reply Memorandum ("Defs.' Reply Memo") at 5, Dr. Sadiker's admission note, Brooks Aff., Exh. C ("Sadiker Admission Note"), and his own, Brooks Aff., Exh. B ("Paiz Admission Note"), are similar. Indeed, in some places the two notes use exactly the same words,[3] and Dr. Paiz admits that he based some of his notes on information that he read. Paiz Deposition, Hingerton Aff., Exh. A ("Paiz Dep.") at 44, 47. A reasonable jury could conclude from this evidence that Dr. Paiz did not perform an evaluation of plaintiff and that his notes of the evaluation are merely copies of Dr. Sadiker's notes.[4]

While a reasonable jury could find credible plaintiff's testimony that Dr. Paiz never examined him, even absent plaintiff's testimony there would remain a genuine issue of material fact because a reasonable jury could conclude from Dr. Paiz's testimony that he did not perform a satisfactory examination of plaintiff. Dr. Paiz testified that he first met the plaintiff at 12:45 p.m., Paiz Dep. at 27, and that he signed an admission form at that time based on his observations, a review of the forms filled out earlier by Dr. Sadiker and, possibly, questions akin to "how are you doing." *Id.* at 73–77, 86. After certifying

---

**2.** An examination meets the requirements of the statute if it conforms to the medical community's generally accepted standards. *Rodriguez*, 72 F.3d at 1062. The determination of what those standards comprise is a question of fact. *Id.* at 1063.

**3.** *Compare, e.g.,* Paiz Admission Note ("Today, he was found at the Hicksville Railroad Station talking to himself and telling commuters that his urine specimen was clean and the police dropped him off on the freeway ... Pt denies psych hosp. Admits he has a long hx of drug use and is on parole due to drug related offense") with Sadiker Admission Note ("Pt was found wandering at the Hicksville Railroad Station talking to himself & telling commuters that his urine specimen is clean & that the police dropped him off on the Freeway ... Pt has long hx of drug use & is on parole due to a drug related offense. Pt. denies past psych hospitalization.").

**4.** Dr. Paiz suggests that the court may disregard plaintiff's testimony as too incredible for a jury to believe. Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judg-

ment ("Defs.' Memo") at 11. However, the cases he cites do not support this proposition. In *Union Bank of India v. Seven Seas Imports, Inc.,* 727 F.Supp. 125, 129–30 (S.D.N.Y.1989) and *Bevill, Bresler & Schulman, Inc. v. Spencer Savings & Loan Assoc.,* 94 B.R. 817, 822 n. 4 (D.N.J. 1989), the courts granted summary judgment because the documentary evidence of the transactions at issue contradicted a party's interpretation of the events. Here, a reasonable jury could find that Dr. Paiz's notes resulted from his copying of Dr. Sadiker's notes rather than from his own evaluation of plaintiff. In *Dister v. Continental Group,* 859 F.2d 1108, 1117–18 (2d Cir. 1988), the court did not make a credibility determination but instead found that the plaintiff's evidence failed to demonstrate that his former employer's asserted non-discriminatory reason for terminating him was actually a pretext for a discriminatory termination. Finally, plaintiff cites dicta in *Butler v. Bensinger,* 377 F.Supp. 870, 874 (N.D.Ill.1974) that was neither dispositive of that case nor binding here. In any event, this court finds that plaintiff's testimony on the issue of whether Dr. Paiz examined him is sufficiently credible that a reasonable juror could believe it.

the plaintiff for admission, Dr. Paiz spent half an hour with the plaintiff. *Id.* at 31–32. During that half hour, Dr. Paiz conducted an AIMS Scale Evaluation, which is a physical examination that lasted more than ten minutes, *Id.* at 69–70, 94, performed a physical examination of ten to fifteen minutes, *Id.* at 82, filled out forms requiring ten or fifteen minutes, *Id.*, and received numerous phone calls about unrelated matters during a "hectic" and "busy" day. *Id.* at 35, 40–41, 67–69. Dr. Paiz signed the Admissions/Screening Note of Dr. Sadiker, which he had read earlier, *id.* at 85, 96, 99, at approximately 1 p.m. *Id.* at 28–29.

Viewing these facts as presented and drawing the inferences most favorable to the plaintiff, a reasonable juror could conclude from Dr. Paiz's testimony that he did not conduct an examination that meets the requirements of M.H.L. § 9.37. Dr. Paiz himself described the day, New Year's Day 1993, as "hectic" and "busy." As plaintiff characterizes Dr. Paiz's testimony, and as a reasonable juror might do so, Dr. Paiz signed the admission form at 12:45 p.m. based solely on his cursory observation of the plaintiff, a review of the medical records and one question about how the plaintiff was doing. From the testimony, a reasonable juror might conclude that Dr. Paiz determined to admit plaintiff before routinely performing some, but not all, of the statute's requirements and that Dr. Paiz merely copied much of the information contained in Dr. Sadiker's Admissions/Screening Note in order to complete the necessary paperwork. Because a reasonable juror could conclude that Dr. Paiz confined plaintiff involuntarily without conducting the evaluation required by M.H.L. § 9.37, the court must deny his motion for summary judgment on the procedural due process issue.[5]

### 2. *Plaintiff's motion for summary judgment*

Viewed in the light most favorable to Dr. Paiz, a reasonable jury could find that Dr. Paiz did conduct an examination that comported with the requirements of M.H.L. § 9.37. Consequently, the court must deny plaintiff's motion for summary judgment on the procedural due process issue.

Dr. Paiz testified that he signed the Physician's Confirmation of Need for Immediate Hospitalization at approximately 12:45 p.m., *id.* at 96, after he had read Dr. Sadiker's notes, observed the plaintiff and asked him a few questions beyond the preliminary questions about how he was feeling. *Id.* at 84–86. According to Dr. Paiz's testimony, he then continued the psychiatric examination for half an hour before he performed the AIMS test and a physical evaluation, Hingerton Aff., Exh. A at 93–4. The psychiatric examination covered a number of areas, including plaintiff's psychiatric history, his use of drugs, his family situation, and his claims that a family member tried to poison him and that people were against him. *Id.* at 45–49, 56–60, 93. Additionally, nurse Carol Beuhler's notes corroborate Dr. Paiz's testimony that Dr. Paiz spoke to plaintiff and also conducted a physical examination. Affirmation of Patricia M. Hingerton dated April 4, 1994, Exh. B at 16–17. In addition, Dr. Paiz's notes contain information not contained in the notes he had reviewed. For example, Dr. Paiz notes, correctly, that plaintiff came to New York from Oakland, California while Dr. Sadiker did not note where plaintiff lived in California. *Compare* Paiz Admission Note with Sadiker Admission Note. In addition, Dr. Paiz's notes refer to somatic complaints of pains in plaintiff's legs. Paiz Admission Note. Dr. Sadiker's notes contain no such reference. Sadiker Admission Note.

Viewed most favorably to Dr. Paiz and with all inferences drawn in his favor, a reasonable juror could conclude from his testimony and the documentary evidence that Dr. Paiz did examine plaintiff and that Dr.

---

5. To the extent that one might read *Rodriguez v. City of New York*, 861 F.Supp. 1173 (S.D.N.Y. 1994), *vacated*, 72 F.3d 1051 (2d Cir.1995), or *Rubenstein v. Benedictine Hospital*, 790 F.Supp. 396 (N.D.N.Y.1992), as suggesting that a court may grant summary judgment in an involuntary confinement case despite the existence of controverted factual issues, *see* Defs. Memo at 3, that theory cannot survive the Second Circuit's decision in *Rodriguez*, 72 F.3d at 1064–65 (court cannot measure doctor's conduct against professional standards when material questions about examination remain unresolved).

Paiz's examination satisfied M.H.L. § 9.37. Even if the jury found that Dr. Paiz copied portions of Dr. Sadiker's notes in his own evaluation, it could reasonably conclude that, under the circumstances, doing so was not a departure from medically accepted standards. Instead, the jury could reasonably determine that Dr. Paiz was merely conserving time during a hectic day without detracting from the thoroughness of his evaluation and that the additional information that Dr. Paiz included in his evaluation forms resulted from his own psychiatric evaluation of the plaintiff.

Plaintiff argues that no reasonable juror could conclude that Dr. Paiz had conducted a sufficient examination under M.H.L. § 9.37 by 12:45 p.m., the time he signed the commitment form. However, the issue of when plaintiff's liberty interest was curtailed is a question of fact, and plaintiff has not demonstrated that Dr. Paiz arrived at a final determination to confine plaintiff at 12:45 p.m. *See, e.g., Lubera v. Jewish Assoc. for Services for the Aged,* 95 Civ. 7845, 1996 WL 426375 (S.D.N.Y. July 30, 1996) (whether doctor decided to certify patient for commitment prior to examination is a question of fact); *cf. Posr v. Doherty,* 944 F.2d 91, 98–99 (2d Cir.1991) ("The issue of precisely when an arrest takes place is a question of fact."); *dePoel v. City of New York,* 772 F.Supp. 106, 109 (E.D.N.Y.1991) (summary judgment inappropriate when question of fact remains unresolved regarding failure to hold hearing within statutory period). A reasonable juror could conclude that although Dr. Paiz signed the form at 12:45 p.m. based on his initial evaluation of plaintiff, he had only made a preliminary determination that he might revise as a result of his continuing examination. Accordingly, plaintiff's motion for summary judgment must be denied.

### B. *Substantive Due Process*

In its earlier opinion, this court concluded that whether plaintiff in fact suffered from a mental illness likely to result in serious harm was a genuine issue of fact material to plaintiff's substantive due process claims. 897 F.Supp. at 704. Nevertheless, the court granted summary judgment to defendants Sadiker and Ohson based on the doctrine of qualified immunity. *Id.* at 708. Dr. Paiz's entitlement to qualified immunity, however, remained an unresolved question of fact. *Id.* at 709. Because the question of whether plaintiff was sufficiently dangerous to warrant involuntary confinement remains open, the court may not grant summary judgment on plaintiff's substantive due process claim against Dr. Paiz unless that determination is based on Dr. Paiz's qualified immunity.

### C. *Qualified Immunity*

■ "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly wrongful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). With regard to an alleged civil commitment in violation of a patient's right to substantive due process, "the availability of qualified immunity turns on whether it was objectively reasonable for the defendants to believe, at the time they examined [plaintiff] and in light of the information that they possessed, that [plaintiff] was dangerous." *Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir.1993). Qualified immunity protects officials in the performance of their duties even if they are genuinely mistaken, but it does not protect "the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). The judgment of a professional is entitled to qualified immunity unless "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 322–23, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982).

As described above, there is a genuine issue of material fact as to whether Dr. Paiz performed an evaluation of plaintiff that comported with the requirements of M.H.L. § 9.37. There is similarly a genuine issue of material fact as to whether Dr. Paiz's perfor-

mance was plainly incompetent.[6] *See, e.g., Rodriguez,* 72 F.3d at 1065 (reversing grant of summary judgment where plaintiff had presented evidence from which a jury could find that doctors' performances failed to meet generally accepted medical standards and therefore were plainly incompetent). Based on the record before the court, a reasonable juror could find deficiencies in Dr. Paiz's examination of sufficient severity to be considered objectively unreasonable and a substantial departure from accepted professional practice and standards. *Demarco,* 897 F.Supp. at 709. Dr. Paiz's objective reasonableness and competence are unresolved issues of fact that preclude a grant of summary judgment in this case.

### D. *False Imprisonment*

■ Plaintiff has also alleged state law claims of false imprisonment. To prove a claim of false imprisonment, plaintiff must demonstrate that (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Demarco,* 897 F.Supp. at 709 (citing *Rubenstein v. Benedictine Hosp.,* 790 F.Supp. 396, 409 (N.D.N.Y. 1992); *Broughton v. State,* 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93 (N.Y.), *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)). The court declined to grant summary judgment to Dr. Paiz on plaintiff's false imprisonment claim pending a determination of whether Dr. Paiz had complied with the provisions of the New York Mental Hygiene Law, thereby rendering his actions privileged. *Demarco,* 897 F.Supp. at 709. Because that issue remains unresolved, the court again must deny the cross-motions for summary judgment on the false imprisonment issue.

### III. *Plaintiff's Motion for Reconsideration of Expungement Remedy*

■ In its previous opinion, this court granted defendant Iafrete's motion to dismiss the claim against him insofar as plaintiff

sought only that Dr. Iafrete expunge his psychiatric record. *Demarco,* 897 F.Supp. at 709. The court premised its decision on Mental Hygiene Law § 33.14, which provides that a petitioner may seek only to seal his mental health records and may do so only by commencing a special proceeding in a New York Supreme Court. Pursuant to Local Rule 3(j), plaintiff timely requested reargument of his claim for expungement. The court has reconsidered its decision and now modifies its Order of May 22, 1995 by reversing its grant of the motion to dismiss defendant Iafrete.

Dr. Iafrete opposes plaintiff's motion for reargument, arguing that plaintiff should have raised his arguments previously. Defs.' Reply Memo at 10–11. However, as noted, plaintiff brought a timely motion for reargument on these grounds, which the court deferred pending resolution of the anticipated renewed summary judgment motion by Dr. Paiz. Moreover, " '[i]t is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment.' " *Conrad v. Beck–Turek, Ltd.,* 891 F.Supp. 962, 967 (S.D.N.Y.1995) (quoting *In re United States,* 733 F.2d 10, 13 (2d Cir.1984)). Because the court has not directed entry of final judgment for Iafrete, *see* Order dated July 18, 1995 ("judgment will not be entered in favor of Dr. Iafrete pending resolution of the liability if any, of Dr. Paiz") and because the court's order of May 22, 1995 did not adjudicate all claims or settle the rights and liabilities of all the parties, the court's grant of Dr. Iafrete's motion to dismiss is an interlocutory order which the court may modify at any time prior to entry of final judgment. *See* Fed.R.Civ.P. 54(b).

■ Addressing the substance of plaintiff's motion for reargument, Dr. Iafrete contends that this court is bound by M.H.L. § 33.14, which provides that a New York Supreme Court may seal a patient's mental health

---

**6.** While Dr. Paiz points out that the defendants in *Glass,* 984 F.2d at 57, made many of the same findings as Dr. Paiz, Defs.' Reply Memo at 7–8, the plaintiff in *Glass* did not contest that the defendants followed the appropriate procedures

before arriving at their conclusions. *Id.* at 57 n. 4. In the present case there is a genuine issue of material fact regarding whether Dr. Paiz followed the appropriate procedures before arriving at his conclusion.

records. In determining whether to apply state law in § 1983 actions, federal courts must follow a three-part test prescribed by 42. U.S.C. § 1988.[7] *Burnett v. Grattan,* 468 U.S. 42, 47, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984). First, courts look to the laws of the United States to determine if they are suitable to carry the civil rights statutes into effect or whether they are deficient in that regard. 468 U.S. at 48, 104 S.Ct. at 2928. Second, if no suitable federal rule exists, courts apply the state law of the forum state. *Id.* Third, courts apply the state law only if it is not inconsistent with federal law or the Constitution. *Id.*

■ The civil rights statutes are 'deficient' under § 1988 if they fail to provide "rules of decision thought essential to the orderly adjudication of rights." *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988) (distinguishing statutes of limitation from notice-of-claim provisions because the former are indispensable to any scheme of justice). However, the existence of a right under § 1983 "implies the existence of all necessary and appropriate remedies," *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969), and a federal court may choose either federal or state rules depending on whichever better serves the policies expressed in § 1983. *Sullivan,* 396 U.S. at 240, 90 S.Ct. at 406. While § 1983 makes no specific provision for expungement, that equitable remedy is part of federal common law and has been applied in § 1983 actions. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 571–72, 95 S.Ct. 729, 734–35, 42 L.Ed.2d 725 (1975) (affirming decision that had provided for expungement as remedy in

§ 1983 action); *Bradley v. Coughlin,* 671 F.2d 686, 690 n. 9 (2d Cir.1982) (section 1983 plaintiff may be entitled to expungement of prison disciplinary proceeding); *Thomson v. Harmony,* 65 F.3d 1314, 1321 (6th Cir.1995) (reversing dismissal of claims seeking expungement as remedy in § 1983 action), *cert. denied,* —— U.S. ——, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996); *Wolfel v. Morris,* 972 F.2d 712, 719 (6th Cir.1992) (affirming expungement of prison records as an appropriate § 1983 remedy); *Monroe v. Thigpen,* 932 F.2d 1437, 1443 (11th Cir.1991) (remanding with instructions to expunge prison records); *Knapp v. Whitaker,* 757 F.2d 827, 846–47 (7th Cir.) (district court in § 1983 action properly expunged material in teacher's personnel records), *cert. denied,* 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985).[8] *See also Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) (federal courts are capable of using the common law to tailor remedies for the injury involved). That expungement may not be available in state court is irrelevant because the relief that a federal court provides in a § 1983 action is a federal rule, even if derived from state law. *Sullivan,* 396 U.S. at 240, 90 S.Ct. at 406. Where the right to injunctive relief exists independently of state law, the state may not burden or limit that right. *Felder,* 487 U.S. at 144, 108 S.Ct. at 2310 ("The burdening of a federal right ... is not the natural or permissible consequence of an otherwise neutral, uniformly applicable state rule.").

■ Just as a state law cannot limit the remedies available under § 1983, it also may not limit the equitable remedies available in federal court. The remedy of expungement

7. Section 1988 provides that:
   The jurisdiction in civil and criminal matters conferred on the district courts by [§ 1983] ... shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal case is held, so far as the same is not inconsistent with the Constitution and laws of

the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ...

8. *Phillips v. Greene County,* 524 F.Supp. 1 (E.D.Tenn.1980), *aff'd* 665 F.2d 1046 (6th Cir. 1981), which Iafrete cites, Defs.' Reply Memo at 15, is inapplicable. *Phillips* merely stands for the proposition that there is no federal constitutional right to expungement of one's records. *Id.* at 2. Demarco does not claim expungement is a constitutional right but seeks it as an equitable remedy for alleged violations of his constitutional right to due process.

is a part of federal equity law, which derived from the English Court of Chancery and is separate from the state equity systems. *Guaranty Trust Co. v. York*, 326 U.S. 99, 105, 65 S.Ct. 1464, 1468, 89 L.Ed. 2079 (1945). As a result, even when addressing state law claims, federal courts may always utilize federal equity rules. Thus, "a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it." *Id.*, 326 U.S. at 106, 65 S.Ct. at 1468–69. As a state may not limit the federal court's equity powers to remedy the violation of a state-created right, it certainly may not do so when the right has been created by Congress. *Cf. Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). Because M.H.L. § 33.14 cannot limit the remedies available in a § 1983 action nor the remedies available in federal court, the court grants plaintiff's motion to reconsider its earlier decision and, upon reconsideration, denies defendant Iafrete's motion to dismiss.[9]

## CONCLUSION AND ORDER

For the reasons explained above, summary judgment is denied to plaintiff Demarco and defendant Paiz with regard to due process and false imprisonment claims. The court's Order of May 22, 1995 is modified insofar as defendant Iafrete's motion to dismiss is denied.

SO ORDERED.

9. Because only limited discovery that has taken place, the propriety of expungement as a remedy is an issue of fact that remains open at this time.