**Ralph NASON, Plaintiff,**

v.

**AMERICAN CANADIAN TOUR, LTD., Tom Curley and Thunder Road Enterprises, Inc. d/b/a Thunder Road International Speedway, Defendants.**

No. 2:96–CV–60.

United States District Court,
D. Vermont.

Oct. 23, 1996.

Roger Peter Decato, West Lebanon, NH, for plaintiff.

Thomas Zeller Carlson, Langrock, Sperry & Wool, Burlington, VT, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a diversity action filed by Plaintiff Ralph Nason ("Nason") against Defendants American Canadian Tour, Ltd. ("ACT"), Tom Curley ("Curley"), and Thunder Road Enterprises for breach of contract, intentional interference with a prospective advantage, fraud in the inducement, negligence, and defamation. Plaintiff's claims arise out of a dispute with Defendants at a stock car racing event. Pending before the Court is Defendants' Motion to Dismiss and/or for Summary Judgment. Plaintiff opposes this motion. For the reasons discussed below, the Motion to Dismiss and/or for Summary Judgment is DENIED.

### I. Factual Background

This is an action in diversity arising out of a dispute between the parties at a stock car racing event. Plaintiff Nason is a resident of Unity, Maine. Defendant ACT is a corporation organized under the laws of the state of Vermont and has its principal place of business in Waterbury, Vermont. Defendant Curley is a resident of Waterbury, Vermont and is employed by Defendant ACT and by Thunder Road International Speedway ("Thunder Road"). Thunder Road is a trade name owned by Defendant Thunder Road Enterprises, a Vermont corporation whose principal place of business is Barre, Vermont. .

ACT promotes, sponsors, and manages stock car racing events. All participants in ACT-sponsored events are required to have membership licenses with ACT. The membership license requires members to abide by ACT rules and regulations, and to waive all rights to judicial review of ACT decisions. Furthermore, Rule I.1 states that "the decision of ACT officials on race procedures will be final and there shall be no appeal or protest thereof", and Rule L.2 provides that the decision of the official scorer with respect to timing and scoring shall be final.

On September 3, 1995, ACT sponsored an event at Thunder Road called the "Milk Bowl," in which Nason, an ACT membership license holder, participated. Defendant Curley was a race official and official scorer at the Milk Bowl. At time trials for the Milk Bowl, it was announced that Nason had achieved a record time and would assume the pole position. Subsequently, at the direction of Curley, it was announced that the record time was in error, and Nason started in the third position instead.

During the race, Nason collided with another car and was forced to leave the track for repairs. Several laps later, Nason returned to the track and again collided with another car. Following the second collision, Defendant Curley directed that Nason be ejected from the race and removed from the race track, and cited the collision as the basis for his decision. Nason alleges, and Defendants do not dispute, that he, his crew, and his family were escorted out of the race track by the police.

This is not the first time that Nason and Curley have had a dispute. In May, 1995, Nason placed second in a stock car race at the Oxford Plains Speedway in Oxford, Maine, at which Curley was officiating. Nason was upset with several decisions made by Curley in that race and refused to attend an ACT-sponsored press conference after the event. Nason was subsequently quoted in the press accusing Curley of bias because he allegedly owned two competing cars in the Oxford Plains race, including the winning car. Curley was himself quoted in the press criticizing Nason's failure to appear at the press conference.

On February 22, 1996, Nason filed suit against ACT, Curley, and Thunder Road on the basis of breach of contract, intentional interference with a prospective advantage, fraud in the inducement, negligence, and defamation claims. In support of these claims, Nason alleges that Curley's decision to modify his trial time and to eject him from the Milk Bowl race was based upon Curley's improper bias toward Nason and contrary to ACT's own regulations. Defendants contend that Curley's actions were consistent with ACT's regulations and without improper motivation.

On March 15, 1996, Defendants moved to dismiss and/or for summary judgment. Plaintiff Nason opposes the motion.

## II. Discussion

This matter is before the Court on motion by Defendants. Defendants have filed a Motion to Dismiss and/or for Summary Judgment pursuant to Fed.R.Civ.P. 12(b) and Fed.R.Civ.P. 56(c). Plaintiff has filed opposition to this motion. Defendants attached to their motion an affidavit from Defendant Tom Curley, a copy of an ACT membership license, and a full copy of the ACT Manual. Plaintiff has attached to its Opposition to Defendants' Motion a copy of the ACT manual, a magazine article, and an affidavit from Ralph Nason. In light of the attachments that both parties have made to their documents, the Court finds that Defendants' motion should be treated as a Motion for Summary Judgment.

### A. Defendants' Motion Treated as Motion for Summary Judgment

According to Fed.R.Civ.P. 12(b), if matters outside the pleadings are presented to and not excluded by a court considering a motion to dismiss under Rule 12(b)(6), "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56". The Second Circuit has emphasized that when "materials outside the pleadings are offered, a district court should adhere strictly to the

language of Rule 12(b)." *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir.1991). This means that "when presented with material outside of the pleadings, the district court must either disregard the material or give the parties notice that the motion is being converted to one for summary judgment and permit the parties to submit evidence accordingly." *Id.* at 155–56.

■ Although Defendants' motion, "Motion to Dismiss and/or for Summary Judgment," and Plaintiff's Opposition to it, plead in the alternative, both parties intended that it be treated as a summary judgment motion. Both parties have presented materials outside the pleadings, and have already relied extensively in their arguments on these materials. Thus, the Court finds that the most practical alternative under Rule 12(b) is to treat the Motion as one for summary judgment.

■ Although a court treating a motion to dismiss as a motion for summary judgment must ordinarily provide the parties with the opportunity to submit additional evidence, this opportunity need not be given here because it is clear that Defendants treated the motion as one for summary judgment and submitted all necessary evidence for such a motion. In addition, Plaintiff was on notice that Defendants were moving, at least in the alternative, for summary judgment, and he submitted an affidavit and attachments with his Objection to Defendants' Motion to Dismiss and/or Summary Judgment, thus obviating the need to provide Plaintiff with further opportunity to submit evidence in opposition to the motion.

### B. Standard of Review

Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleadings but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judg-

ment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view these materials in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513.

### C. Bad Faith: A Genuine Issue of Material Fact

The threshold issue presented by Defendants' motion for summary judgment is whether the Court should decline to review ACT's interpretation of its own rules. Defendants base their motion for summary judgment on the theory that the Court should not interfere with a private association's interpretation of its rules, and should therefore decline to exercise jurisdiction over this case. Plaintiff contends that judicial review is appropriate despite the fact that ACT is a private association.

Two Second Circuit decisions address this issue. In both *Crouch v. NASCAR*, 845 F.2d 397 (2d Cir.1988) and *Koszela v. NASCAR*, 646 F.2d 749 (2d Cir.1981), the court articulated a principle of finality regarding the rules of another stock car racing corporation, NASCAR. In both cases, the court denied stock car racers' breach of contract and other related claims arising from decisions of NASCAR officials during the course of a race.

In *Koszela*, the court recognized a principle of judicial noninterference in the law of voluntary associations. According to this principle, courts should in most circumstances refrain from interfering in the rule-making affairs of a voluntary organization. *See, e.g., STP Corp. v. United States Auto Club*, 286 F.Supp. 146, 151 (S.D.Ind.1968). The court held, however, that this general rule was not strictly applicable in cases involving for-profit businesses in which the "members have no rights whatsoever with respect to the internal governance of the organization." *Koszela*, 646 F.2d at 754. Despite this loosening of the noninterference principle, the court refused to review decisions of NASCAR officials regarding race procedure or scoring. Instead, the court noted that the NASCAR rules clearly stated

that the decisions of NASCAR officials on race procedure and scoring would be considered final, without provision for any form of administrative appeal. As noted above, ACT's rules include similar provisions. The court embraced this rule of finality on the grounds that it was necessary to prevent protracted disputes over NASCAR officials' decisions. *Id.* at 755.

In *Crouch,* the court reiterates the noninterference principle and the accompanying caveat for for-profit organizations, as well as the rule of finality set forth in *Koszela.* The court goes on to recognize an exception to the general rule of finality in the case of allegations of bad faith. Crouch was a stock car racer who was originally awarded first place in a NASCAR stock car race, but who lost this ranking when NASCAR overturned the local official's decision, pursuant to a NASCAR rule. The district court held that the decisions made by a private organization are not reviewable, but the procedures used in reaching those decisions are, and set out the following standard for review: "where the association enforces its rules in a manner that is unreasonable or arbitrary courts may intervene." *Crouch,* 845 F.2d at 401. The Second Circuit agreed with the lower court's distinction between reviewing a private organization's decisions and reviewing its procedures, but rejected the standard articulated by the district court. The Second Circuit stated, "we conclude that the district court should have deferred to NASCAR's interpretation of its own rules *in the absence of an allegation that NASCAR acted in bad faith* or in violation of any local, state, or federal laws" (emphasis added). *Id.* at 403. The court notes specifically that there was no allegation of bad faith or unlawful conduct in the case, and that there was in fact an implicit acknowledgment of good faith on the part of the NASCAR officials. *Id.* Accordingly the court deferred to NASCAR's determination of its own rules.

█ In light of the standard for judicial review articulated in *Crouch* and *Koszela,* the critical issue presented by Defendants' motion for summary judgment is whether Defendants acted in bad faith in modifying Nason's trial time and in ejecting him from the Milk Bowl event. The Court need not determine whether bad faith did in fact exist, but instead whether bad faith is an issue of material fact about which there is genuine dispute.

The bad faith issue is clearly material because it is determinative, under the *Crouch* standard, of whether the Court should exercise jurisdiction in this case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. It is also clear that a genuine dispute exists as to whether Defendants acted in bad faith. Plaintiff makes specific allegations of bad faith on the part of Defendant Curley. In particular, Nason alleges that Curley's conduct in modifying Nason's trial time and in ejecting him from the race track was motivated by an "extreme dislike" for Nason arising from comments Nason made about Curley following the Oxford Plains incident in May 1995, and from Nason's refusal to appear at an ACT news conference following that incident. In support of this allegation, Nason has submitted his own affidavit as well as a magazine article describing the event. Defendants have submitted an affidavit of Defendant Curley in which Curley claims that his actions were free of any animus toward Nason, and were motivated solely by a concern for the fairness and safety of the Milk Bowl event. Viewing the facts in the light most favorable to the Plaintiff, Plaintiff has met his burden of demonstrating that a genuine dispute of material fact exists as to whether Defendants acted in bad faith, and that Defendants are not entitled to judgment as a matter of law.

In his Opposition to Defendants' Motion, Plaintiff contends that material disputes also exist with regard to the factual predicates for Plaintiff's breach of contract, intentional interference with a prospective advantage, fraud in the inducement, negligence, and defamation claims. For example, Plaintiff argues that it is for the fact finder to determine whether Defendants' conduct interfered with Plaintiff's prospective advantage, and whether the removal of Plaintiff by police escort in front of a grandstand full of spectators caused serious injury to Plaintiff's reputation. However, Defendants' motion for summary judgment rests entirely on the argument that

judicial review is inappropriate in this case because of the rule of finality set out in *Koszela* and *Crouch.* As moving party, Defendants "bear[ ] the initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of [the record] which they believe[ ] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552. Because Defendants did not identify the factual particulars of Plaintiff's specific claims as the basis for its motion for summary judgment, the Court will decline to address the allegedly disputed facts other than the issue of bad faith raised by Plaintiff.

In light of the factual dispute which exists regarding bad faith on the part of the Defendants, Defendants' motion for summary judgment is DENIED.

### III. Conclusion

Based on the foregoing analysis, Defendants' Motion to Dismiss/and or for Summary Judgment (paper 4), treated by the Court as a motion for summary judgment, is hereby DENIED.