[650 NYS2d 473]

PRASHANT ENTERPRISES, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 75855.)

Third Department, December 5, 1996

## APPEARANCES OF COUNSEL

*Young & Paniccia,* Binghamton *(Alfred Paniccia, Jr.,* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Michael S. Belohlavek* and *Thomas D. Hughes* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

Claimant, the operator[1] of a Quality Inn Motel on State Route 11 in the Town of Kirkwood, Broome County, brought this action to recover for damage to real and personal property sustained in the July 31, 1986 flooding of claimant's property as the result of the overflow of Stratmill Creek. On a prior appeal, we determined that the State was solely liable for claimant's damages and remitted the matter to the Court of Claims for a determination of claimant's damages on the record previously developed (206 AD2d 729, 731). In April 1995, the Court of Claims rendered a detailed decision calculating the damage to realty and personalty and lost rental income at $186,815.64. Contending that the award is insufficient, claimant appeals the judgment entered thereon.

The motel property consists of approximately five acres of land improved with four principal buildings, a parking lot, and a swimming pool, lawn, shrubbery and other exterior landscaping improvements. Building No. 1 contains the motel's service facilities, including the lobby, front desk, offices, restrooms, conference room, cocktail bar, lounge area, kitchen, dining room and banquet room, all of which sustained flood damage. Buildings Nos. 2 and 3 contain 105 motel rooms, 50 of which were damaged in the flood. Building No. 4, containing 50 motel rooms, was undamaged due to its elevated site.

In making its assessment of damages, the Court of Claims was faced with three complicating factors. First, the greatest part of the remedial work was performed by claimant's

---

1. Although claimant was actually a mere lessee, it appears that its contractual arrangement with the owner made it responsible for the damage that was sustained in the flood. The State having raised no objection, damages were awarded to claimant as fully as if it had been the owner of the property.

principal, Paul Vakharia, his family and his staff in a flurry of activity during the 20-day period immediately following the flood, and little attention was given to the maintenance of records of the work performed and expenses incurred. Second, because of financial constraints, in many cases claimant was required to perform makeshift repairs instead of replacing damaged fixtures or furnishings. Third, the property was not inspected by claimant's expert, Dennis Niland, a State-licensed and board-certified public adjuster, until five years after the damage was sustained. Nonetheless, the State chose not to engage its own expert and offered no evidence to controvert Niland's trial testimony.

The interaction of these factors caused the most difficulty in connection with the Court of Claims' assessment of damage to the 50 motel rooms. The evidence showed, and the Court of Claims properly found, that the muddy flood waters entered these rooms to a depth of approximately one foot. Among the affected improvements were floor coverings (carpeting in the main room and vinyl flooring in the bathrooms), exterior entry doors, hollow-core bathroom doors, door trim, stud and sheetrock walls (covered with wallpaper in the main rooms and ceramic tile in the bathrooms), rubber base moldings, combination HVAC (heating, ventilation and air conditioning) units, and furniture including conventional beds, water beds, sofa beds, nightstands, credenzas, activity tables, TV stands, draperies, bedspreads, comforters and linens.

According to Niland, because exposure to the flood waters caused the sheetrock to swell and buckle and made it likely that the sheetrock would in the future mildew and deteriorate further, proper repair of the walls required replacement of all sheetrock from the floor to a height of four feet and removal and replacement of the wallpaper, rubber baseboard, ceramic tile and, in the exterior walls only, fiberglass insulation to a height of four feet. Incidental to this work, all wall fixtures, including wall mirrors, clothes racks, towel bars and towel holders, would have to be removed, stored, cleaned and then reinstalled when the walls were completed. In addition, Niland indicated that the hollow-core bathroom doors needed to be replaced, that the solid exterior doors needed to be rehung and that the door jambs and trim needed to be repainted. There is no dispute that the floor coverings in the 50 motel rooms had to be removed and replaced. As for the personal property, Niland opined that most of the furniture, including the conventional beds, water beds, sofa beds, activity tables, nightstands

and credenzas, was a total loss and that the HVAC units required reconditioning at a cost of $3,000 each.

The actual course taken by claimant was far different. The wallpapered walls were repaired by pounding or smoothing out the raised areas and regluing the loose wallpaper. In the bathrooms, claimant reapplied and regrouted the ceramic tiles that had popped off. The waterbeds, sofa beds and the conventional bed mattresses and box springs were dried, cleaned, chemically treated to eliminate the mildew odor, and returned to service. Three or four of the waterbed heater controls failed and were replaced. Each HVAC unit was removed from its through-the-wall metal sleeve, hosed clean and reinstalled. In the spring of 1987, 40 of the units failed and were serviced at a cost of $18,178.45.

In the face of the sharp contrast between Niland's uncontroverted testimony as to the repairs that *needed to be made* and Vakharia's account of the repairs that *were actually made*, the Court of Claims rendered a compromise verdict. Recognizing that the flood waters had damaged the sheetrock in buildings Nos. 1, 2 and 3 and crediting Niland's testimony as to the need for replacement, the court awarded claimant only 50% of the full replacement cost, its rationale being that, although there was "some evidence * * * that permanent damage survived the corrective efforts by Vakharia and his cohorts * * * some allowance must be made for the fact that after approximately 20 days these rooms were placed back in service apparently without any reduction whatsoever in the per diem rental of each and without * * * any reduction in the frequency of occupancy". In addition, finding that the bathroom walls looked like new after the tiles were reglued and grout reapplied, the court denied the claim for the cost of replacing the sheetrock and then reinstalling the ceramic tile in the bathrooms.

Although we can well appreciate its motivation, we are constrained to conclude that the Court of Claims erred in its assessment of the damage to the sheetrock walls in buildings Nos. 1, 2 and 3. Fundamentally, the proper measure of damages for permanent injury to real property is the diminution in the market value of the property by reason of that injury or, put another way, the difference between the value of the land before the injury and the value after the injury (*see*, 36 NY Jur 2d, Damages, § 74, at 131). In many cases, however, the cost of repairing the injury will be the proper measure of damages, so long as the cost of restoring the land to its former condition is less than the diminution in the market value of the whole

property by reason of the injury (*see*, 36 NY Jur 2d, Damages, § 74, at 132). In such a case, the claimant is entitled to the cost of repair at the time the damages occurred (*see*, 36 NY Jur 2d, Damages, § 72). As correctly argued by claimant, there is no theory of damages that allows a reduction in the cost of repair on account of the fact that the injured party continued to use the property in a damaged, albeit functional, condition.

It appears to us that the rationale underlying the Court of Claims' approach was that the value of the subject commercial property, as determined by the room charges it was capable of producing, was diminished in a lesser amount than the actual cost of repair, requiring a downward adjustment in the damages claimed by claimant. Unfortunately, this approach had the effect of impermissibly requiring claimant to prove a "mitigation" issue (*see*, *Jenkins v Etlinger*, 55 NY2d 35, 39). In fact, having established its damages by means of the cost of restoration, claimant had no burden to establish its damages by any other measure and, there having been no competent evidence of the property's actual decline in market value, the Court of Claims was bound by claimant's showing (*see*, *supra*, at 39-40; *Hollenbeck v Genung*, 198 AD2d 677, 678).

Under the circumstances, having credited Niland's testimony that the sheetrock had been permanently damaged by contact with the flood waters, the Court of Claims had no reasonable alternative but to accept claimant's uncontroverted evidence as to the cost of repair of the walls, including the cost of replacing the sheetrock to a height of four feet and removing and replacing the wallpaper and baseboard. In addition, in view of the persuasive evidence that the sheetrock was damaged in the bathrooms as well as in the bedrooms, we conclude that the Court of Claims should have made a corresponding award for the cost of removing and replacing the first four feet of sheetrock and removing and reinstalling the ceramic tile in those rooms as well.[2] Finally, an award should have been made for the cost of storing and reinstalling the wall fixtures in the motel rooms.

We take a similar approach to certain of the personal property situated in the motel rooms in buildings Nos. 2 and 3.

---

2. Although the Court of Claims' decision expressly denied any damages for replacement of sheetrock in the motel room bathrooms, it awarded damages equal to 50% of Niland's figure for all sheetrock repairs, including those in the bathrooms. In addition, the Court of Claims inadvertently based its award on only 49 of the 50 motel rooms. Niland's figure for all 50 rooms, which we credit, was $18,247.68.

Based upon Niland's uncontradicted testimony concerning the need for replacing the sofa beds and the laminated nightstands and credenzas, we conclude that the Court of Claims should have awarded claimant the full value and not merely 50% thereof. In addition, the court should have allowed the claim for cleaning the bedroom drapes. Although we agree with the Court of Claims' analysis with regard to the conventional bed box springs, it appears to have compensated claimant for only 37 units, whereas the evidence established that there were 69 full size conventional beds in the flooded motel rooms.

Similarly, in view of Niland's testimony that the oak parquet flooring in the lounge in building No. 1 had to be replaced and the Court of Claims' recognition that the flooring indeed looked "worn" after the flood, we conclude that the failure to make an award for this item was an oversight that should be remedied. Finally, the court erred in denying claimant the amount of sales tax that would have been expended in connection with the recommended improvements to the real property and repair and replacement of the personal property. We shall calculate sales tax at the rate of 7% on $245,393.16, that being the sum of the court's award ($186,815.64) and our additions thereto exclusive of sales tax ($58,577.52).

We agree with the State, however, that claimant's remaining assertions of error lack merit. First, without any evidence to substantiate Vakharia's "estimate" that the occupancy rate was 85%, it was reasonable for the Court of Claims to rely on the 50% occupancy rate on the night of the flood (70 guests/ 155 rooms) in making an award for lost profits. Second, the claims for replacement of the fiberglass insulation and conventional bed mattresses, reconditioning of all of the HVAC units, inspection of electric outlets, painting of door trim, re-hanging and painting of exterior doors, contents removal, demolition and cleanup, trucking and disposal, contractor overhead and profit, engineering and architectural services, landscaping, resealing of the parking lot and several other small items were unduly speculative or simply lacked adequate support in the record. Finally, given the state of the record, we are not persuaded to disturb the Court of Claims' award for replacement of carpeting based on the 1984 materials price and the actual installation expense, or so much thereof as claimant was able to substantiate.

Based upon the foregoing, the Court of Claims' award shall be modified so as to increase it in the following respects:

| Item | Trial Award | Our Award | Increase |
|------|------------|-----------|----------|
| Sheetrock replacement | $ 8,973.34 | $18,247.68 | $ 9,274.34 |
| Wallpaper | 31,679.46 | 63,358.91 | 31,679.45 |
| Ceramic tile replacement | 1,000.00 | 3,000.00 | 2,000.00 |
| Remove and reinstall wall fixtures | 0.00 | 2,500.00 | 2,500.00 |
| Oak parquet floor | 0.00 | 1,663.20 | 1,663.20 |
| Baseboard replacement | 2,634.67 | 3,266.20 | 631.53 |
| Full size box springs | 3,700.00 | 6,900.00 | 3,200.00 |
| Sofa bed replacement | 1,330.00 | 2,660.00 | 1,330.00 |
| Credenza replacement | 3,062.00 | 6,125.00 | 3,063.00 |
| Nightstand replacement | 2,046.00 | 3,782.00 | 1,736.00 |
| Drapery cleaning | 0.00 | 1,500.00 | 1,500.00 |
| Sales tax | 0.00 | 17,177.52 | 17,177.52 |
| TOTAL INCREASE | | | $75,755.04 |

The award shall be affirmed in all other respects.

CARDONA, P. J., WHITE, CASEY and CARPINELLO, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, with costs to claimant, by increasing the award of damages to claimant by $75,755.04, and, as so modified, affirmed.