**Christian J. HEIDORF, Plaintiff,**

v.

**TOWN OF NORTHUMBERLAND, Edgar A. King, individually and as Supervisor of the Town of Northumberland, Donald K. Coons, individually and as Building Inspector/Zoning Administrator of the Town of Northumberland, and George Corlew, individually and as Superintendent of Highways of the Town of Northumberland, Defendants.**

No. 96–CV–0473.

United States District Court, N.D. New York.

Sept. 17, 1997.

Ruberti, Girvin & Ferlazzo, P.C. (Salvatore D. Ferlazzo, Christopher P. Langlois, of counsel), Albany, NY, for Plaintiff.

Dreyer, Boyajian L.L.P. (Daniel J. Stewart, of counsel), Albany, NY, for Defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

This action, brought pursuant to 42 U.S.C. § 1983, focuses upon the circumstances surrounding the demolition by defendants of a building owned by plaintiff Christian Heidorf. Plaintiff claims a number of constitutional violations.

Defendants now move to dismiss the Complaint, or in the alternative, for summary judgment. Plaintiff moves, *in limine,* to declare certain evidence relevant and admissible.

## I. BACKGROUND

### A. Facts:

Plaintiff purchased a 1.22 acre piece of property in the Town of Gansevoort in 1980 for $18,500. Pl. Aff. ¶ 4; Ex. F at 12. On the property stood the Dutch Reformed Church ("the Church"), a house and a small garage. *Id.* The Church was built by Herman Gansevoort, the son of a Revolutionary War General in George Washington's army, in 1848. Pl.Ex. B. Religious services in the Church had ceased by 1958, but because of its unique architectural and historical value, *see* Pl.Ex. C, plaintiff planned to use the Church to house a museum dedicated to the preservation and study of American military history.

The Church remained vacant from 1980 to 1995 as plaintiff attempted to solicit the interest of non-profit and municipal entities in transferring the Church in the hope of obtaining federal or state restoration funds. Def. Rule 7.1(f) Stat. ¶ 6; Pl. Rule 7.1(f) Stat. ¶ 6; Pl. Aff. ¶ 6. These efforts, including an offer to transfer the Church to defendant Town of Northumberland ("the Town"), were unsuccessful. *Id.;* Def. Ex. F. Plaintiff did succeed, however, in having the Church placed on both the New York State and National Registers of Historic Places on December 2, 1994 and January 20, 1995, respectively. Pl. Aff. 10.

Throughout the same period, the condition of the Church continued to deteriorate. Pl. Rule 7.1(f) Stat. ¶ 5. Over the years, the bell tower began to lean, and a 2–3 foot hole developed in the roof. Pl.Ex. F at 16. As a result, the ceiling and parts of the front of the Church began deteriorating as well. *Id.*

On Saturday, August 12, 1995, plaintiff left home for fourteen-day military duty in the New York Army National Guard at Fort Drum in Watertown, New York. Pl. Aff. at 11. On August 13, 1995, the portion of the roof of the Church supporting the steeple

and belltower collapsed into the interior of the Church. Def. Rule 7.1(f) Stat. ¶ 8; Pl. Rule 7.1(f) Stat. ¶ 8. Soon thereafter, plaintiff's fiancee, Christine Robinson, arrived at the scene, as did fire department personnel and other Town officials. One of the officials who arrived was defendant Donald Coons, the Town's part-time Building Inspector. Coons had been a self-employed contractor for twenty-five years when he became Building Inspector in 1993. Def. Ex. H at 4–5.

Upon arriving at the scene, Coons walked around the building at a distance of approximately 20 feet, checking the walls for cracks and trying to estimate how far out the walls had expanded. Def. Ex. H at 37. Coons claims that as a result of the steeple's collapse, the south wall of the Church at the midpoint had a outward bulge of approximately 18", and was badly cracked with a 4" opening at the edge of the window header. Pl. Aff. Ex. G. Furthermore, according to Coons, the front wall was more severely damaged, sustaining outward bulges of at least 18" and severe cracks. *Id.* In Coons' opinion, that wall was ready to collapse.[1]

Because Coons feared for the Church's stability and the safety of the children that often played in the area, he pronounced the building condemned. Robinson Aff. ¶ 7. Coons informed Robinson of his decision, who told him that plaintiff was not home. Robinson Aff. ¶ 7. Coons assured Robinson that plaintiff would be given notice that the building had been condemned, and would be given time to repair, stabilize or demolish the structure. Robinson asked Coons for his phone number so that plaintiff could call him once plaintiff got in touch with Robinson. *Id.* ¶ 8.

In the meantime, the property was cordoned off with yellow tape, and defendant Edgar King, the Town Supervisor, arrived, to whom Coons expressed his concerns about the instability of the Church. Def. Ex. I at 57. At some point, Coons made the decision to "secure" the building, which the Court presumes to mean demolish.[2] Accordingly, King told Coons: "this is your job, this is what you were hired to do, you're the man that has to make this judgment and the Town Board hires you and I am the Supervisor and I stand by you. Whatever decision you make, I am not going to second guess you. You're the man that makes those decisions, I don't." *Id.* at 58–59.

---

1. Plaintiff takes issue with Coons' assessment, relying in part on Robinson's observations that there were no cracks evident in the side walls, that the structure showed no signs of instability, and that the structure, while damaged, appeared stable and in no danger of collapse. Robinson Aff. ¶ 6. Plaintiff also relies upon the affidavit of Michael Lynch, a registered architect and professionally licensed engineer who is Restoration Coordinator for the New York State Office of Parks, Recreation and Historic Preservation. Lynch examined what remained of the building's structure after the demolition.

 In his opinion, proper assessment of the structural integrity of a building requires the type of knowledge of structural evaluation that can only be obtained through appropriate training or years of practical experience. Lynch Aff. ¶ 6. Lynch feels that an interior inspection should have taken place, and opines that, based upon Robinson's description of the Church's condition on August 13, 1995, the building was not in imminent danger of collapse.

2. It is difficult to tell what Coons' initial plan was, since he insists that his decision to "secure" the building did not mean that he wanted to demolish it. At his deposition, Coons testified as follows:

Q. Did you talk to Christine [Robinson] before you made the decision to—
A. Yes.
Q. And did you tell her that you were going to demolish the property?
A. I told her we have got to secure the building. I don't like the word demolish, because I didn't mean to demolish it. I was talking about securing the building. That is how I would rather word it.
Q. Well, you told her that you had to secure the building?
A. Yes.
Q. And what did you mean by the word secure?
A. Just what we did.
Q. So secure means to demolish?
A. No.

Def. Ex. H at 45. Perhaps Coons' insistence on the euphemism "secure" was meant to cover all the options he had available, calling to mind Lewis Carroll's famous passage:

"When I use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you can make words mean so many different things."

Lewis Carroll, *Through the Looking Glass* 163.

At approximately 1:15 p.m., Robinson told Coons, King, and the other Town personnel present that she would contact plaintiff. Robinson Aff. ¶ 10. Her attempt was unsuccessful, however, and upon returning outside, she was told by Coons that because of the "imminent danger" the Church presented, a decision had been made to knock out the most obviously bulging sections of the walls. *Id.* ¶ 11. Coons did not indicate that the entire structure would be demolished, nor did he give Robinson anything in writing regarding the Town's authority to take such action, or regarding plaintiff's responsibilities in connection therewith. Furthermore, defendants did not attempt to contact an engineer at any point. Robinson Aff. ¶ 12; Pl. Ex. H at 8–9; Pl.Ex. I at 22–24.

Coons contacted defendant George Corlew, the Town Highway Superintendent, and asked him if he had anything available with which to demolish the Church. Def. Ex. H at 50; Ex. I at 8. Corlew brought the "Gradall", a ditch digging device with a bucket. Def. Ex. I at 14. The demolition began soon thereafter. *Id.* at 15. After the center of the Church had been knocked down, the remaining front side of the wall was demolished. Robinson Aff. ¶ 12. The rest of the Church followed; by 3 p.m. on August 12, 1995, the entire Church was destroyed. *See* Def. Ex. G.

## B. Procedural History

Plaintiff commenced this lawsuit on March 20, 1996, alleging that defendants, under color of law, deprived him of his rights under the Fourth, Fifth,[3] Ninth and Fourteenth Amendments to the United States Constitution. Plaintiff brings these federal claims under 42 U.S.C. § 1983, and brings state law claims for intentional infliction of emotional distress, negligence, and injunctive relief.

Defendants now move to dismiss the Complaint, or, in the alternative, for summary judgment.

---

**3.** Plaintiff concedes that his claim under the Takings Clause is not ripe at this time. Therefore, this claim is dismissed without prejudice.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss/Summary Judgment.

Defendants move pursuant to Fed. R.Civ. P. 12(b)(6) to dismiss plaintiff's Complaint for failure to state a claim upon which relief may be granted, or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Rule 12(b) provides, however, that where matters outside the pleadings are submitted to and considered by the Court on a motion to dismiss under Rule 12(b)(6), "the motion shall be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material pertinent to such a motion." The parties have submitted a number of materials on the present motion, which itself is pled in the alternative, putting plaintiff on notice that defendants were moving for summary judgment. "Thus, the Court finds that the most practical alternative under Rule 12(b) is to treat the [m]otion as one for summary judgment." *Nason v. American Canadian Tour, Ltd.,* 942 F.Supp. 220, 223 (D.Vt.1996); *see Janneh v. Runyon,* 932 F.Supp. 412, 415 and n. 2 (N.D.N.Y.1996), *aff'd,* 108 F.3d 329 (2d Cir.1997); *Dawson v. DEA,* 927 F.Supp. 748, 751 n. 6 (S.D.N.Y.1996), *aff'd,* 112 F.3d 503 (2d Cir.1997).

### (1) The Standard for Summary Judgment.

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460,

465 (2d Cir.1989); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. at 1355–56. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56).

It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

**(2) Property Interest**

█ Defendants first argue that because the Church had become a danger and a nuisance, plaintiff had no protected property interest at the time of the demolition.

In support of their argument, defendants cite *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) and *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). These cases, however, are inapposite: each addressed the type of *uses* that may be proscribed in the context of the Supreme Court's Takings Clause jurisprudence, and did not deal with property *interests* under the Fourteenth Amendment.

█ Even if we assume, *arguendo*, that the Church was in serious disrepair at the time of the demolition, plaintiff nonetheless retained a protectable property interest in the building. "So long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question of whether account must be taken of the due process clause.'" *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C.Cir.1991) (quoting *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975)). *Cf. Price v. City of Junction, Texas*, 711 F.2d 582, 589 (5th Cir. 1983) ("Whether a junk car has little or great value, it is constitutionally protected property."). Moreover, while the question of whether the property presented a danger or nuisance is relevant to the question of what process was due plaintiff, the danger the Church presented cannot diminish the fact that, in the most literal sense, plaintiff was deprived of property.

**(3) Substantive Due Process**

Defendants next argue that because plaintiff's claim is properly addressed under the procedural component of the Due Process Clause, his substantive due process claim should be dismissed. The Court disagrees.

█ The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114, (1994) (plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995); *Ayeni v. Mottola*, 35 F.3d 680, 691 (2d Cir.1994), *cert. denied*, 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995). The Court does not conclude, however, that plaintiff's procedural due process claim and the *Albright* decision foreclose a claim based upon substantive due process. Rather than providing separate sources of constitutional protection, the procedural and substantive components of the due process clause are two sides of the same coin. *See, e.g., DeMarco v. Sadiker*, 952 F.Supp. 134, 137 (E.D.N.Y. 1996). The Court thus concludes that the

14th Amendment's guarantee of procedural due process is not the sort of "explicit source of constitutional protection" that would foreclose a substantive due process claim.

 Nonetheless, the crux of plaintiff's *substantive* claim *is* in fact derived from an explicit textual source: the Fourth Amendment. First, the Supreme Court has held that a "seizure" under the Fourth Amendment "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Illinois,* 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). In the present case, there can be no question that the demolition of plaintiff's Church amounted to a seizure within the meaning of the Fourth Amendment. Though the property was not literally seized and carried away, as in *Soldal,* it *was* reduced to rubble. That the Church remained on plaintiff's land in thousands of pieces likely makes little difference to plaintiff, and, the Court concludes, makes little difference under the Fourth Amendment. *See, e.g., Fuller v. Vines,* 36 F.3d 65, 67 (9th Cir.1994) (killing of dog by police was Fourth Amendment seizure), *cert. denied sub nom.,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995); *Thomas v. City of Dallas,* 1997 WL 472502 at *5 (N.D.Texas) ("the [plaintiffs] have been permanently deprived of their possessory interest in their home in that it is no longer standing. This certainly qualifies as a 'seizure' for purposes of the Fourth Amendment."); *Suss v. A.S.P.C.A.,* 823 F.Supp. 181, 186 (S.D.N.Y.1993) (forced entry and demolition of outer wall constituted Fourth Amendment seizure).

Moreover, because plaintiff contends that defendants acted unreasonably at best in demolishing the Church, his claim fits squarely within the contours of the Fourth Amendment's protections. Because this claim is grounded in an explicit textual source, his substantive due process claim must be dismissed.

 Even if the Court were to reach the merits of plaintiff's substantive due process claim, plaintiff has failed to raise an issue of fact as to the nature of defendants' conduct in this respect. To prove his substantive due process claim plaintiff must establish that in depriving him of a property interest, the defendants acted in an arbitrary or irrational manner. *Crowley v. Courville,* 76 F.3d 47, 51 (2d Cir.1996); *Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 102 (2d Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). Viewing the evidence in the light most favorable to plaintiff, Coons' decision was ill-informed, hasty, and unreasonable. "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995); *see also Harris v. City of Akron,* 20 F.3d 1396, 1405 (6th Cir.) (evidence of faulty and hasty decision to demolish building insufficient to support substantive due process claim), *cert. denied,* 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). On the present record, no jury could reasonably conclude that Coons' decision was arbitrary or irrational, or that it shocks the conscience.

The case in many respects is similar to *Harris v. City of Akron.* In that action, the Building Inspector's office responded to a call regarding a potential building hazard. *Harris,* 20 F.3d at 1398. The superintendent of building responded, and found a two story brick building that he believed was dangerously close to falling onto the street and a neighboring house. *Id.* The building inspector himself then inspected the home, and determined that an emergency demolition was necessary. *Id.* The demolition began four hours after the danger was reported. *Id.*

In opposition to the defendants' summary judgment motion, the plaintiff submitted the affidavit of an expert in building construction and diagnostics, who averred, *inter alia,* that the defendants' inspection "did not remotely meet minimal standards for ascertaining structural worthiness", and that there was no evidence that the roof was collapsing at the time the demolition was ordered. *Harris,* 20 F.3d at 1398–99. The Sixth Circuit found

such proof unconvincing on plaintiff's substantive due process claim, noting that the evidence raised no issue of arbitrary, unreasonable, or bad faith conduct. *Id.* "Although perhaps the defendants could have made further inquiries concerning the condition of the building, their deposition testimony ma[de] clear that they acted on the basis of their observations and training." *Id.*

The Court is constrained to reach the same conclusion in the present case. Though plaintiff produces a multitude of evidence calling into question the wisdom and propriety of Coons' decision, none of that evidence would lead a factfinder to conclude that his decision was made in bad faith or without a rational basis. Thus, plaintiff's substantive due process claim is without merit.

### (4) Procedural Due Process

Defendants next argue that the post-deprivation remedies available to plaintiff under state law are all the process to which he is entitled.

■ Fourteenth Amendment procedural due process generally requires a pre-deprivation hearing before property rights can be terminated. *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 298–300, 101 S.Ct. 2352, 2371–73, 69 L.Ed.2d 1 (1981). However,

> either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of due process.

*Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). Defendants thus argue that since the condition of the Church presented an imminent danger to public safety, quick action was required, and plaintiff is entitled only to postdeprivation remedies.

■ The flaw in defendants' argument is that it assumes there is no factual dispute as to whether an emergency existed at the time of the demolition. The Court concludes otherwise. On this record, a reasonable jury could conclude that "the necessity of quick action" was not present on August 13, 1995 at the Church. First, there is considerable dispute as to whether demolition was in fact necessary. The Lynch affidavit, though failing to illustrate that defendants' conduct was arbitrary or irrational, clearly raises a fact issue as to whether demolition reasonably was necessary. *See* Lynch Aff. ¶ 12. Lynch explicitly states that in his opinion, the Church was not in imminent danger of collapsing following the collapse of the steeple. *Id.* Second, it is undisputed that Coons was inexperienced in making such assessments, and that his inspection, viewed in plaintiff's favor, was cursory at best. *See, e.g.,* Def. Ex. I at 13, 31, 41. Coons' own testimony reflects his ambivalence as to how "imminent" the danger was:

> Q. And did you know if there was an imminent threat of danger?
>
> A. I wouldn't say immediately, but I am talking about in the next few days or maybe a week or two, we could have got a heavy wind, a heavy rain and I would say that that would have taken the walls down, yes.
>
> . . .
>
> Q. So as you sat there that day, you didn't believe—well, you already testified—you felt that it could stay up for another week or so?
>
> A. Possibly, yes, or maybe two week [sic], maybe a month, maybe longer.

Def. Ex. I at 48. The evidence as a whole presents factual disputes as to whether an emergency existed requiring immediate demolition.

Defendants, based upon *Harris v. City of Akron,* would have the Court hold that even if a factual issue exists on this question, that issue is not material. *Harris* held that whether an emergency situation *actually existed* was irrelevant, so long as the official acts in accordance with his authority to make such judgments. *Id.* at 1404. The Court need not pass on the wisdom of this rule, however, since the Second Circuit explicitly has addressed this very issue:

> Under *Parratt,* before reaching the question of the adequacy of the state remedies,

a court must first find "the necessity of quick action" or "the impracticality of providing any predeprivation process." Thus, the existence vel non of an emergency herein is a material fact and is vigorously contested by the parties.

*Burtnieks v. City of New York,* 716 F.2d 982, 988 (2d Cir.1983). The question of whether an emergency existed is indeed material; since plaintiff has raised a genuine issue on this question, summary judgment must be denied on plaintiff's procedural due process claim. *See id.*

### (5) Fourth Amendment

■ Having recognized the frivolousness of their initial argument that the Fourth Amendment applies only in the criminal context, *see Soldal,* 506 U.S. at 67, 113 S.Ct. at 546–47, defendants now argue that because plaintiff's Fourth Amendment claim is duplicative of his due process claim, it should be dismissed. The two claims, however, are not collapsible, as the Eighth Circuit has recognized:

> We think that the Supreme Court's ruling in *Soldal* requires more [than a showing that the government provided due process]. To collapse the Fourth Amendment reasonableness standard into the Fourteenth Amendment notice and hearing requirements in all cases is to ignore *Soldal.* When a Fourth Amendment claim is brought, we need to conduct an independent review of the seizure for reasonableness in addition to any analysis regarding procedural due process.

*Samuels v. Meriwether,* 94 F.3d 1163, 1168 (8th Cir.1996). Because plaintiff's Fourth Amendment claim is independent of his procedural due process claim, summary judgment on this basis is denied.

### (6) Qualified Immunity

Lastly, defendants argue that they are entitled to qualified immunity.

■ "[G]overnment officials performing discretionary functions ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Three factors are utilized by courts in this circuit to determine whether a right was clearly established: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). Qualified immunity also will protect a defendant, even where the right was clearly established, if it was objectively reasonable for the defendant to believe the acts did not violate that right. *See Benitez v. Wolff,* 985 F.2d 662 (2d Cir.1993); *see also Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (official entitled to qualified immunity so long as his or her "actions could reasonably have been thought consistent with the rights ... violated.").

■ Defendants argue that even if plaintiff's rights were clearly established, it was objectively reasonable for them to believe that their conduct did not violate those rights. On a motion for summary judgment, a defendant will be entitled to qualified immunity if

> the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.

*In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996). "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

■ The question again turns upon whether an emergency existed, since if it did, plaintiff would not be entitled to a pre-depri-

vation hearing under *Parratt.* Plaintiff has raised fact issues as to the reasonableness of Coons' decision to demolish the Church based upon what he perceived to be an emergency. Coons' initial determination, according to Robinson, was that the building was condemned, and that plaintiff would be given a period of time within which to repair, stabilize or demolish the structure. Robinson Aff. at ¶ 8. He obviously changed his mind. Coons had no engineering background, and his decision, made one hour after his arrival on the scene, was based upon an exterior inspection from a distance of twenty feet. Def. Ex. H at 4–5, 32, 36. Coons never considered calling an engineer, and admitted that there was no immediate threat of danger. *Id.* at 47–48. Furthermore, nothing in Coons' testimony or in the record indicates the source of his alleged authority to make the decision to demolish the building.

This Court's decision in *Waldron v. Rotzler,* 862 F.Supp. 763 (N.D.N.Y.1994) (McAvoy, C.J.), is distinguishable. There, defendants supported the objective reasonableness of their decision to demolish a building with photographs and affidavits of individuals who observed the building after the fire which eventually necessitated its destruction. *Id.* at 772. Witnesses observed debris falling from the building, and the walls of the building were waterlogged and in danger of collapsing because of the water weight. *Id.* The building itself had been gutted by the fire. *Id.* Because of these undisputed facts, the Court concluded that it was objectively reasonable for defendants to believe that their actions fit the emergency exception to the pre-deprivation hearing rule, and were thus not violative of plaintiff's due process rights. *Waldron,* 862 F.Supp. at 772.

The undisputed facts in *Waldron* compelled a finding of objective reasonableness. Here, no such conclusion is mandated. In short, the Court finds that a rational jury could conclude that it was objectively unreasonable for Coons to believe that in demolishing plaintiff's Church, he was acting in a fashion that did not violate plaintiff's clearly established rights. *See Williams v. Greifinger,* 97 F.3d 699, 707 (2d Cir.1996).

■ The question remains, however, whether Corlew and King are entitled to qualified immunity. It is undisputed that Corlew took no part in the decision to demolish the Church. Def. Ex. J at 17. Plaintiff nonetheless relies upon the fact that Corlew testified at his deposition that he "might have" told plaintiff, after the demolition, that he disagreed with the decision. *Id.* at 16–17. Such a disagreement, however, is of little import. Nothing in the record indicates that Corlew, in following the orders of either Coons or King, was objectively unreasonable. There is no evidence that Corlew was even aware of the alleged shortcomings in Coons' decision-making process. Based upon these facts, the Court concludes that it was objectively reasonable for Corlew to believe that, in carrying out the order to demolish the Church, he was not violating plaintiff's constitutional rights. Therefore, Corlew is entitled to qualified immunity, and the § 1983 claim against him accordingly is dismissed. *See, e.g., Kayou v. Greifinger,* 1994 WL 532869 at *5 (S.D.N.Y.) (officials entitled to qualified immunity where it was objectively reasonable for them to rely on instructions they received from superiors).

■ Issues of fact exist, however, as to whether defendant King is entitled to qualified immunity. King was Town Supervisor, and testified at his deposition that he did not know whether the Town had a written policy with respect to emergency procedures in this type of situation. Def. Ex. I at 43. Moreover, King testified that he felt it was not his job to contact the Town Engineer to determine whether a building is structurally sound, but failed to state the source of that belief. Finally, King specifically testified as follows:

> And so I just assured [Coons], I said, look, this is your job, this is what you were hired to do, you're the man that has to make this judgment and the Town Board hires you and I am the Supervisor and I stand by you. Whatever decision you make, I am not going to second guess you. You're the man that makes those decisions, I don't.

Def. Ex. I at 58–59. This testimony is significant in two respects. First, King does not

indicate anywhere why he believed that it was in the sole discretion of the Building Inspector whether to demolish a building without notice to the owner. Second, by "standing by" Coons' decision, King may have implicitly taken part in it. Since the record is devoid of any evidence of the process by which decisions are made in such a situation,[4] the Court cannot conclude that no rational jury could find that King's actions were objectively unreasonable. Thus, summary judgment is denied as to defendant King on plaintiff's § 1983 claim.

## B. Plaintiff's Motion *in Limine*

Plaintiff moves, *in limine*, for an order declaring certain of his evidence as to the proper measure of damages relevant and admissible.

This motion arises out of the parties' dispute as to the method of valuing plaintiff's loss. Plaintiff argues that he should be entitled to recover the cost of reproducing the Church, less depreciation, in consideration of the unique characteristics of the property and its status as a recognized historical structure. Defendants contend that the proper measure of damages is the fair market value of the building immediately prior to the demolition.

■■■■ "Fundamentally, the proper measure of damages for permanent injury to real property is the diminution in the market value of the property by reason of that injury or, put another way, the difference between the value of the land before the injury and the value after the injury." *Prashant Enterprises, Inc. v. State of New York*, 228 A.D.2d 144, 650 N.Y.S.2d 473, 476 (3d Dep't 1996) (citing 36 N.Y. Jur 2d, Damages, § 74, at 131).[5] Where property is unique, however, fair market value may not represent adequate compensation. *Matter of County of*

*Suffolk (C.J. Van Bourgondien, Inc.)*, 47 N.Y.2d 507, 419 N.Y.S.2d 52, 54, 392 N.E.2d 1236, 1237 (1979). In the case of such "specialty" property, the measure of damages will be the replacement cost of the property minus depreciation. *Id.*

■■■ An improvement must meet four criteria to constitute "specialty" property: (1) the improvement must be unique and specially built for the specific purpose for which it is designed; (2) the improvement must have been designed for a special use and must be so specially used; (3) there must be no market for the type of property and no sales of property for such use; and (4) the improvement must be an appropriate improvement at the time of the injury and its use must be economically feasible and reasonably expected to be replaced. *Id.* (quoting *Matter of County of Nassau (Colony Beach Club of Lido)*, 43 A.D.2d 45, 349 N.Y.S.2d 422, 426 (2d Dep't 1973), *aff'd*, 39 N.Y.2d 958, 386 N.Y.S.2d 886, 353 N.E.2d 849 (1976)); *see Gramercy Boys' Club Association, Inc. v. City of New York*, 141 A.D.2d 365, 529 N.Y.S.2d 476 (1st Dep't 1988), *aff'd*, 74 N.Y.2d 678, 543 N.Y.S.2d 372, 541 N.E.2d 401 (1989).

■■■ The Court need not address the first, third or fourth criteria, since plaintiff's argument clearly fails as to the second. The improvement in question was designed for use as a Church, and had not been so specially used since 1958. Plaintiff, however, argues that:

> Plaintiff's claim to specialty valuation is premised upon the use of the Dutch Reformed Church as a structure of unique historical and architectural value recognized as such by its listing on the State and National Registers of Historic Places.

---

4. Defendants submit Local Law # 3 of the Town of Northumberland, and N.Y. Town Law § 130. They do not indicate what these laws are intended to establish on this motion, however. Both laws address the procedures to be followed in declaring a building dangerous or unsafe; both require notice and a hearing. Neither addresses emergency situations, or what official has the authority to assess the propriety of demolition in such situations.

5. The Court looks to New York State law on this question for two reasons. First, plaintiff brings pendent state law claims. Second, under § 1983 "[t]he courts may utilize state law rules to assist in computing damages for civil rights violations, but the amount of damages awarded must ultimately be based on federal standards." SCHWARTZ & KIRKLIN, SECTION 1983 LITIGATION· CLAIMS AND DEFENSES § 16.5 at 240 (3d ed.1997).

Pl. Reply Mem. at 5. Plaintiff seems to equate the *status* of the Church with its *use*, an equation the Court finds unconvincing. First, it takes no great leap of reasoning to conclude that the specialty use for which the Church was designed clearly was religious: that is, it was designed to be used as a Church. Second, though plaintiff planned on using the Church as an historic museum, and directed his efforts in that direction, there is no evidence in the record that his planned use ever materialized. Thus, not only was the Church not designed for the unique purpose plaintiff claims (a museum of military history),[6] the Church was never even actually used for that purpose.

Because the Church fails to meet this criterion of a specialty improvement under *C.J. Van Bourgondien, Inc.* and *Colony Beach Club,* his motion *in limine* must be denied. Accordingly, testimony regarding the cost of reproducing the Church minus depreciation will be disallowed.

### III. CONCLUSION:

For all the foregoing reasons, it is hereby

**ORDERED,** that defendants' motion for summary judgment is GRANTED in part and DENIED in part; that portion of the motion seeking summary judgment on plaintiff's substantive due process claim and on plaintiff's § 1983 claim against defendant Corlew is GRANTED; the motion is DENIED in all other respects. It is further

**ORDERED,** that plaintiff's motion *in limine* to declare evidence of the replacement value of the Church relevant and admissible is DENIED.

**IT IS SO ORDERED.**

---

**6.** Plaintiff concedes that the Church was not designed for historical purposes, but argues that "its historical associations and representative architecture, combined with the passage of time, effected a conversion of the property from its specialized use as a church to a specialized use as an historical property." Pl. Mem. in Support at 8 n. 1. This strained argument continues to miss the point that the Church's *status* as an historic building is not, in itself, a "use." Moreover, the Court declines plaintiff's invitation to modify New York law on "specialty" improvements in this regard.